468 A.2d 784

**Howard BECKMAN, Appellant**

v.

**VASSALL–DILLWORTH LINCOLN–MERCURY, INC., and Lincoln-Mercury, Division of Ford Motor Company.**

Superior Court of Pennsylvania.

Argued Feb. 4, 1983.

Filed Nov. 10, 1983.

430

Lawrence Pauker, Norristown, for appellant.

Amy B. Ginensky, Philadelphia, for appellees.

Before WIEAND, McEWEN and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The instant action was instituted in the lower court by the Plaintiff-Appellant, Howard Beckman, against the Defendant-Appellees Vassall-Dillworth Lincoln Mercury, Inc. (hereinafter referred to as "Vassall-Dillworth"), an automobile dealership, and Lincoln-Mercury, Division of Ford Motor Company (hereinafter referred to as "Ford"). The Plaintiff,

alleging a breach of an agreement for the sale of a new automobile, sought equitable relief in the nature of an order for specific performance, as well as damages. He files the instant appeal to our court from an order of the lower court which granted a motion for summary judgment filed by Ford.

Our scope of review in cases involving the review of summary judgments is very clear. As our Court stated in *Husak v. Berkel, Inc.*, 234 Pa.Super. 452, 458, 341 A.2d 174, 177 (1975):

> "Summary judgment is made available by Pa.R.C.P. No. 1035, 12 P.S. Appendix, when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. This severe disposition should only be granted in cases where the right is clear and free from doubt. To determine the absence of genuine issue of fact, the court must take the view of the evidence most favorable to the non-moving party, and any doubts must be resolved against the entry of the judgment." (Citations omitted.)

The pertinent facts of record, read in the light most favorable to the Appellant, shows that on December 14, 1978, the Appellant and the Defendant Vassall-Dillworth entered into a written agreement for the Appellant's purchase of a 1979 Lincoln Continental automobile. The agreement provided for a purchase price of $12,286.00. The agreement contained the following relevant "no agency" provision:

> "It is understood that there is no relationship of principal and agent between the dealer and the manufacturer and that the dealer is not authorized to act, or attempt to act, or represent himself, directly or by implication as agent of the manufacturer, or in any manner assume or create, or attempt to assume or create any obligation on behalf of or in the name of the manufacturer."

The Plaintiff maintained that approximately four weeks after the agreement was executed for the purchase of the automobile, when the Plaintiff inquired about the car, he was advised by Vassall-Dillworth that the order agreement could not be found so that no car had then been ordered for him. However, he alleges that the dealer asserted a willingness to order another car, but at a price different from the price originally agreed to between Plaintiff and the dealer.

After various preliminary procedural problems not relevant to this appeal were resolved in the lower court, Ford filed an Answer and New Matter.[1] The Appellant filed a Reply to New Matter, and discovery proceedings followed. On May 21, 1981, Appellee Ford filed a Motion for Summary Judgment. The Appellant filed responses to that Motion, and after argument before the lower court, an order was entered granting summary judgment.

The lower court determined that there were no genuine issues of material fact in dispute and that Ford could not be held liable for any breach of contract on Plaintiff-Appellant's theory that Ford was a principal of the dealer Defendant, Vassall-Dillworth. In reaching this conclusion, the lower court determined that the "no agency" provision of the sales agreement, recited above, precluded any finding of a principal-agent relationship between the manufacturer and the dealer. The lower court rejected Appellant's claim that Ford failed to raise the lack of agency defense properly in its pleadings. Further, the court found no merit in the Appellant's contentions that Ford's possible liability could be based upon the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P.L. 1224, No. 387, § 1, as amended by the Act of November 24, 1976, P.L. 1166, No. 260, § 1, 73 P.S. § 201–3.1, and the regulations issued pursuant to that statute. The lower court also determined, contrary to the Appellant's conten-

---

1. Vassall-Dillworth ceased business in March, 1979, and a default judgment was entered against it in this litigation in August, 1979. Ford remains as the only active party defendant in the case.

tions, that the exclusion of agency clause was not unconscionable, and that the Appellant would not be entitled to equitable relief in the nature of specific performance, as he had failed to demonstrate the absence of an adequate remedy at law.

The Appellant raises several contentions of error on this appeal. He first argues that the lower court should not have addressed the Appellee's defense based upon the no agency provision of the agreement, as it was not pleaded as New Matter, pursuant to Pa.R.C.P. 1030 and 1045(b).[2] He maintains that the failure to so plead resulted in the waiver by Appellee of this defense, which was raised for the first time in Ford's Motion for Summary Judgment.

 This contention does not appear to have been raised by the Plaintiff in his written Answer to Ford's motion for summary judgment, and the lower court does not allude to it in its Opinion. Even if we assume that the Plaintiff raised it in a timely manner in the lower court, and that it was not thereby waived, we nevertheless find no substantive merit to the claim. Rule 1030 does not specifi-

---

2. Rule 1030 states:
 "All affirmative defenses, including but not limited to the defenses of accord and satisfaction, arbitration and award, discharge in bankruptcy, duress, estoppel failure of consideration, fraud, illegality, immunity from suit, impossibility of performance, laches, license, payment, release, res judicata, and waiver and, unless previously raised by demurrer and sustained, the defenses of statute of frauds and statute of limitations, shall be pleaded in a responsive pleading under the heading 'New Matter'. A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading."
 Rule 1045(b) states:
 "All affirmative defenses, including but not limited to those enumerated in Rule 1030, and the defenses of consent, qualified privilege, fair comment, truth and justification, and, unless previously raised by demurrer and sustained the defenses of statute of limitations and statute of frauds, shall be pleaded under the heading 'New Matter'. A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading. The defenses of contributory negligence and assumption of risk need not be pleaded. A plaintiff who fails to file a reply to averments of the defendant's new matter shall be deemed to admit all such averments other than averments relating to contributory negligence or assumption of risk."

cally require one to raise a "no-agency" defense affirmatively in New Matter. Our Court has explained that an affirmative defense is distinguished from a denial of the facts which make up the plaintiff's cause of action in that an affirmative defense will require an averment of facts *extrinsic* to the plaintiff's claim for relief. *Lewis v. Spitler*, 266 Pa.Super. 201, 209, 403 A.2d 994, 998 (1979). See also *Watson v. Green*, 231 Pa.Super. 115, 331 A.2d 790 (1974). In this case, the agreement containing the "no-agency" clause was appended to the Appellant's Amended Complaint, and alleged to be a part of that pleading. Ford's Answer to the Amended Complaint specifically denied that Vassall-Dillworth was its agent. Accordingly, Ford properly responded with a denial in its Answer to a facts *intrinsic* in the Amended Complaint. Further pleading of the same response, by stating it as an affirmative defense in New Matter, was not necessary under the particular facts of the instant case.[3] Accordingly, we find no merit in the Appellant's initial claim of error.

Next, we examine several arguments raised by the Appellant in connection with his contention that the "no agency" provision of the sales agreement was unconscionable. Initially, we address the claim that the lower court was mandated to hold a full evidentiary hearing on the issue of unconscionability. The Act of November 1, 1979, P.L. 255, No. 86, § 1, as set forth in 13 Pa.C.S.A. § 2302, which applies to this issue, provides:

(a) Finding and authority of court.—If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may:

(1) refuse to enforce the contract;

---

3. Our Court has noted that the right of amendment has always been liberally granted in Pennsylvania. See *Pugh v. Bankers Mutual Insurance Co.*, 206 Pa.Super. 136, 211 A.2d 135 (1965); *Pellegrine v. Home Insurance Co.*, 200 Pa.Super. 48, 186 A.2d 662 (1962). Thus, in this case, where it does not appear that any prejudice would have resulted to the Appellant from the granting of such permission, Ford would have properly been permitted to amend its response to plead the "no-agency" defense under New Matter.

(2) enforce the remainder of the contract without the unconscionable clause; or

(3) so limit the application of any unconscionable clause as to avoid any unconscionable result.

(b) Evidence by parties.—When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

It appears to be an issue of first impression in the appellate courts of our Commonwealth as to whether a claim of unconscionability may be decided during summary judgment proceedings or whether a full hearing is mandated. Section 2302, recited above, does not specifically require that an evidentiary hearing be held, but merely that the parties be afforded a reasonable opportunity to present evidence. In the instant case, we note that the lower court had the benefit of affidavits and deposition testimony when it ruled upon the motion for summary judgment.

While we have found no Pennsylvania appellate precedent on this point, support for the lower court's refusal to schedule an evidentiary hearing may be found in the decision of the United States District Court in *Stanley A. Klopp, Inc. v. John Deere Co.*, 510 F.Supp. 807 (E.D.Pa. 1981). In that case, it was held that unconscionability is a question of law for the court and as long as no issue of material fact exists, a court may conclude on a motion for summary judgment that as a matter of law a contract or a contract clause is enforceable despite an allegation of unconscionability. Further support for such a procedural approach is evident in *Earl M. Jorgensen Co. v. Mark Construction, Inc.*, 56 Haw. 466, 540 P.2d 978 (1975) and *Block v. Ford Motor Credit Co.*, 286 A.2d 228 (D.C.App. 1972). Based upon our reading of the statute and our agreement with the approach taken in the cases cited above, we conclude that the lower court is not mandated in all cases to hold a full evidentiary hearing when an unconscion-

ability claim is raised in the context of a motion for summary judgment. Further, for reasons explained more fully below, we find that the lower court did not err in refusing to hold an evidentiary hearing on the unconscionability claim of Appellant in the particular circumstances of the instant case, as the record before the court provided sufficient evidence to permit the court to render a decision on the issue of unconscionability.

In connection with his contention that a hearing was mandated on the question, the Appellant also maintains that the lower court erred in finding that the "no-agency" clause was unconscionable. The Appellant supports his position by referring us to an affidavit he submitted to the lower court in opposition to the Appellee's request for summary judgment. In that document, he averred that when he was given the contract for signature, he was "never told or made aware" of the clause on the back of the agreement setting forth the "no-agency" language. This, he argues, presented ample evidence to support his unconscionability claim, and to show that the agreement was a contract of adhesion.

We find this position unconvincing. We must initially note that while the Appellant may not have been "told or made aware" of the print on the back side of the agreement, he nevertheless admitted in a deposition that he had read the whole contract before signing it.[4] With regard to his claim of unconscionability, we recognize the rule that a contract or a clause in a contract is to be considered unconscionable if there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other." See Witmer v. Exxon Corp., 495 Pa. 540, 551, 434 A.2d 1222, 1228 (1981), citing Williams v. Walker-Thomas Furniture Company, 350 F.2d 445, 449 (D.C.Cir.1965). We agree with

4. It has been held that in the absence of proof of fraud, the failure to read a contract one signs is an unavailing excuse or defense, and cannot justify an avoidance, modification or nullification of the contract or any provision thereof. Estate of Brant, 463 Pa. 230, 344 A.2d 806 (1975). See also, Stanley A. Klopp, Inc. v. John Deere Co., supra.

the finding by the lower court that the Appellant submitted no evidence to show either an absence of meaningful choice on his part or any term which was unreasonably favorable to the Appellee. To accept the Appellant's position in this case, in the absence of any proof, we would have to hold that every exclusion of agency clause is *per se* unconscionable. Such a declaration would clearly be improper. Thus, in the absence of any evidence to support his claim, we reject the Appellant's assertion of unconscionability.

We also find a lack of merit in the argument that the lower court erred when it found no genuine issue of fact with regard to the intention of the parties at the time of the signing of the contract. While the Appellant claims he did not want the "no-agency" clause to be a part of the contract, he has not alleged fraud, mistake or other unusual circumstances to explain the presence of that provision in the agreement he read and signed. In the absence of proof of such unusual conditions, courts will enforce contracts as written. *National Cash Register v. Modern Transfer Co., Inc.*, 224 Pa.Super. 138, 302 A.2d 486 (1973); see also *Mellon Bank N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001 (3rd Cir.1980). Not only did the Appellant not allege or prove fraud or other excusing conditions, but the record showed that he was an experienced businessman, equipped to understand the meaning of the terms of the agreement he signed. Moreover, it is well-established that the written terms of a contract constitute the agreement between the parties and its terms cannot be added to nor subtracted from by parol evidence. *Kattelman v. Sabol*, 425 Pa. 197, 228 A.2d 379 (1967). All preliminary negotiations, conversations and verbal agreements must be considered to be merged into and superseded by the subsequent written contract. Thus, it is evident, in the absence of allegations or proof of fraud, mistake, or the like, that the lower court was justified in finding no genuine issue of fact as to the intention of the parties when the contract was signed.

The Appellant next argues that the lower court erred in finding no genuine issue existed for trial on his

contention that Ford violated the Unfair Trade Practices and Consumer Protection Law and the Rules and Regulations promulgated pursuant to that Act. The Law, Act of December 17, 1968, P.L. 1224, No. 387, as amended by the Act of November 24, 1976, P.L. 1166, No. 260, in Section 3.1 (73 P.S. § 201–3.1) provides that the Attorney General may adopt rules and regulations necessary for the enforcement and administration of the Act, and that such rules and regulations shall have the force and effect of law. Pursuant to that authority, the following Rules and Regulations [5] were adopted, applicable to manufacturers in the automotive industry:

> With respect to any manufacturer, the following shall be considered unfair methods of competition and unfair or deceptive acts or practices:

> \* \* \* \* \* \*

> (3) To increase prices of motor vehicles which the dealer had ordered for private retail consumers prior to the dealer's receipt of the written official price increase notification. A sales contract signed by a private retail consumer shall constitute evidence of each such order.

After reviewing the record, we find that the Appellant failed to present any evidence which, if true, would establish a violation of this Rule or a cause of action under it. The only evidence that Ford had increased prices was the hearsay statement, in the Appellant's affidavit and in his deposition testimony, that a representative of the dealer told him that there was no record of his original order, but that the dealer would readily place an order for the vehicle he wanted, however at an increased price because of price increases pronounced by Ford after the Appellant had placed his original order. As discussed above, the lower court was justified in finding that the dealer, based upon the contract, could not be considered an agent of Ford. Thus, his hearsay statements could not constitute an admission or other evidence against Ford. Despite an opportunity to do so, the Appellant never employed discovery to

5. See 37 Pa.Code § 301.3.

determine the date of receipt by the dealer of any "written official price increase notification." Moreover, while the Appellant did possess a copy of a sales contract, which, under the Rule, constitutes "evidence" of an "order", he testified in his deposition that the car had *already* been ordered by the dealer from Ford for the dealer's *own stock,* and further, that he believed that the dealer had never submitted his order to Ford. Thus, it is clear that though the order constituted "evidence" under the Rule, the record before the lower court demonstrated facts obviating any finding of a violation of the Rule. More specifically, the record demonstrated that the car was not ordered by the dealer for the customer, but rather had already been on order from Ford for the dealer's own stock. Additionally, the Appellant's own testimony negated the other "evidence" that Ford had ever received the order. Finally, we cannot ignore the absence of any evidence as to any written notification of price increases which may have been made by Ford or received by the dealer. It is apparent that the lower court did not err in rejecting the claims of the Appellant based upon the Unfair Trade Practices and Consumer Protection Law, and the Rules and Regulations promulgated pursuant to that statute.

The Appellant next contends that the lower court acted incorrectly in holding that the Appellant was not entitled to specific performance because he failed to show that he had no adequate remedy at law. Although the lower court acted *sua sponte* in this matter, it has been held that a court may act upon its own motion to dismiss such a request for equitable relief when specific performance would not be appropriate. *Easton Theatres Inc. v. Wells Fargo Land and Mortgage Co.,* 265 Pa.Super. 334, 401 A.2d 1333 (1979). It is also clear that an order for specific performance is inappropriate where the moving party has an adequate remedy at law. *Roth v. Hartl,* 365 Pa. 428, 75 A.2d 583 (1950). Our Court has held that specific performance is a proper remedy when the subject matter of an agreement is an asset that is unique or one such that its

equivalent cannot be purchased on the open market. *Tomb v. Lavalle,* 298 Pa.Super. 75, 444 A.2d 666 (1981); see also the Act of November 1, 1979, P.L. 255, No. 86, § 1, 13 Pa.C.S.A. § 2716. In this case, the record shows that the Appellant was given an opportunity by the dealer to purchase the automobile he wanted, but at a higher price. It may not be ignored that the Appellant could also have sought to purchase the same vehicle from another source. His remedy in such circumstances was to seek damages for any difference between the original order price and the actual purchase price he paid. See the Act of November 1, 1979, P.L. 255, No. 86, § 1, 13 Pa.C.S.A. § 2713. Because the subject matter of the contract was not unique, and because it is obvious that an adequate remedy at law was available, we agree with the lower court's rejection of the Appellant's demand for specific performance.

We next examine the contention that the "no-agency" clause was ambiguous and must be construed against the Appellee. We reject this claim summarily. The clause, as quoted earlier in this Opinion, is clear and susceptible to only one interpretation. That is, that the dealer was not an agent of the manufacturer, and had no authority to act as its agent. We find no merit to the Appellant's arguments to the contrary, and no basis for construing any aspect of the clause against the Appellee.

We also find without merit the contention by the Appellant that the lower court erred in not finding an oral or implied contract with the dealer which did not contain a "no-agency" provision as to Ford. The lower court correctly found that such a contract, covering the sale of goods valued in excess of $500.00, had to be in writing to be enforceable. See the Act of November 1, 1979, P.L. 255, No. 86, § 1, 13 Pa.C.S.A. § 2201.

The final contention of the Appellant is that the lower court acted incorrectly in failing to consider factual matters which he claims established the existence of a principal and agent relationship between Ford and the dealer. In this regard, the Appellant cites evidence indicating that Ford

made substantial capital contributions to the dealer and owned a two-thirds of the stock of the dealership. In the instant case, there is a complete absence of proof of express, implied or apparent authority from Ford to have the dealer act as its agent. To the contrary, the evidence of the unambiguous no-agency clause in the Sales Agreement mitigates against such a finding. Further, the Appellant after reading the whole contract, including that clause, signed it. The same document has been offered as the very foundation for his suit. Having already rejected the unconscionability and other challenges to the "no-agency" clause in the contract, we cannot ignore its validity and the Appellant's agreement to be bound to it. He cannot avoid his clear acquiescence that there was no principal-agent relationship by his suggestion of ownership or control, while at the same time basing his claims on the remaining aspects of the same contract.[6] We therefore reject his final claim of error.

The order of the lower court is hereby affirmed.

---

6. The Restatement of Agency, Second, provides, in § 150:
"If an integrated contract by its specific terms excludes the principal as a party, extrinsic evidence is inadmissible to show that he is a party; if the integrated contract by its specific terms makes the principal a party, extrinsic evidence is not admissible to show that it was agreed that he should not become a party."