478 A.2d 11

**Carl E. KEMBEL, Helga Kembel, Jerry D. Hassinger, Diane M. Hassinger, Paul C. Nace and Kathryn H. Nace, Appellants,**

**v.**

**Edwin D. SCHLEGEL, David L. Schlegel, Vera G. Schlegel and Hegins Valley Lines, a corporation.**

Superior Court of Pennsylvania.

Argued Jan. 12, 1984.

Filed May 25, 1984.

Petition for Allowance of Appeal Denied Sept. 18, 1984.

Jordan D. Cunningham, Harrisburg, for appellants.

Daniel L. Sullivan, Harrisburg, for appellees.

Before WICKERSHAM, DEL SOLE and MONTEMURO, JJ.

WICKERSHAM, Judge:

Plaintiffs-appellants appeal from the order of the Court of Common Pleas of Dauphin County refusing to enjoin defendants-appellees from operating a transportation business on certain land owned by appellees. Appellants allege that appellees' business violates restrictions in appellees' deed, that it constitutes a nuisance, and that appellants have sustained monetary damage as a result of appellees' business.

The trial court found that in 1950, appellees' father, Raymond Schlegel, constructed a cement building on Lot 47 of the land in question, which he used as a garage to house buses and mail trucks. From that time to the present, this building has been used to park, maintain, and repair buses and trucks used by the Schlegels in their bus transportation and mail delivery business. In 1958, Raymond Schlegel and his wife acquired Lots 44, 45, and 46, which were and are used for the parking of buses, trucks, and automobiles of patrons and employees. In 1963, Raymond Schlegel formed a partnership with his sons, Edwin and David, known as Schlegel Transportation Company (the Company). In the same year, the Company acquired certain common carrier rights from the Pennsylvania Public Utility Commission. Between 1965 and 1970, a shelter for the housing of buses was constructed on the northern side of the cement block building previously constructed on Lot No. 47. This shelter partially extends onto Lots 44, 45, and 46. By 1972, the Company had acquired three (3) diesel powered vehicles. From June 1972 to the time of the hearings, the Company [1] has owned between five (5) and eight (8) diesel powered vehicles. During 1979 and 1980, the Company instituted

1. We note that in 1975, Raymond Schlegel and his wife conveyed the land in question to Edwin, David, and Vera Schlegel as a gift and, at the same time, Raymond Schlegel conveyed his interest in Schlegel Transportation Company to his daughter, Vera, as a gift. From that time until the present, appellees, Edwin, David, and Vera Schlegel, have been the sole owners of the Schlegel Transportation Company and the lots in question.

various commuter routes to and from the city of Harrisburg. Some of these services were requested by Dauphin County Human Services.

Appellants Carl and Helga Kembel acquired property near the site of the Schlegel Transportation Company in 1959 and 1960. They constructed a residence on this land in 1962. This land is not located within the same plan of lots as the lots upon which appellees' business is conducted.

Appellants Jerry and Diane Hassinger acquired their residence, which is constructed on Lot 42 of the same plan of lots as appellees' business, in 1972.

Appellants Paul and Kathryn Nace acquired their residence, which is constructed on Lot 41 of the same plan of lots as appellees' business, in 1962.

The demands of appellees' business, especially the common carrier concern, has required the Company to operate, repair, maintain, and prepare the motor vehicles during late evening and early morning hours, both on weekdays and weekends.

> With the exception of periodic complaints from the [appellant] Carl Kembel concerning slight tire damage to the bank located on the western side of his property, and occasional complaints from Kembel concerning noise, the [appellees'] business has been conducted on Lots. Nos. 44, 45, [46] and 47 ... without interference from any [appellant] or other individual from 1950 as to Lot No. 47 and 1958 as to Lots. Nos. 44, 45 and 46, and no legal action or other legal proceeding has been instituted by any individual to limit or remove the [appellees'] business until the instant lawsuit was instituted.

Lower ct. op., 10–22–81, at 11.

On October 11, 1979, appellants filed this action in equity alleging that appellees had breached the restrictive covenants in their deed and seeking to enjoin appellees' operations on the basis of an alleged nuisance. Appellants sought to enjoin appellees from conducting any type of business on any of the lots in question between the hours of 5:00 p.m. and 7:30 a.m. on weekdays, and at any time on

weekends. Appellants also sought monetary damages. A number of hearings were held and on October 22, 1981, the Honorable Clarence C. Morrison issued an opinion and order denying appellants' application for injunctive relief and monetary damages. Appellants filed exceptions to the opinion and order, and argument was held before the court *en banc* on May 26, 1982. The court *en banc* issued an order denying and dismissing appellants' exceptions on September 28, 1982. This appeal timely followed.

Appellants state the first issue for our consideration as follows:

> Did the lower court err in finding that ap[p]ellants were barred from seeking equitable relief of the court by the theory of laches.

Brief for Appellants at 3.

A review of the briefs submitted to this court indicates that both parties are under the impression that the lower court held that appellants' entire cause of action was barred by the doctrine of laches. A thorough reading of the trial court opinion, however, establishes that the court held that only appellants' claim concerning appellees alleged violation of restrictions in their deed was so barred. *See* Lower ct.op., 10–22–81, at 15–17. The trial court never mentioned laches in its discussion of appellants' nuisance claim. We agree with the lower court that appellants' claim that appellees violated restrictions in their deed is barred by the doctrine of laches.[2]

In that part of its opinion dealing with the restrictive covenant, the trial court first held that the restrictive covenant referred to by appellants was a condition governing the *type* of building that could be erected, not the *use* to be made of the building. Therefore, the covenant could not

---

2. We recognize that the opinion of the court *en banc* dated September 28, 1982 is not as clear on this point as the opinion of the trial court dated October 22, 1981. The opinion of the court *en banc* fails to clarify that the laches doctrine applies only to appellants' restrictive covenant claim. Nevertheless, we hold that the trial court was correct in finding that the restrictive covenant claim is barred by the doctrine of laches. Since the trial court did not apply the doctrine in reference to appellants' other claims, neither will we discuss it further.

be applied to restrict the type of business conducted on appellees' lots. The trial court then went on to state that even if the restrictive covenant were applicable, appellants could not enforce it because they had acquiesced in the violation of the restriction. It is clear that any violation of the building restriction existed at least since the late 1960s when the shelter was built. This suit was not commenced until 1979. When an individual seeks to enjoin a violation of a restrictive covenant after an unreasonable delay, the claim is barred by the doctrine of laches. *Meadow Run/Mountain Lake Park Ass'n v. Ragone*, 24 Pa. D. & C.3d 18 (1982). Thus, appellants' claim that appellees violated the restrictive covenant in their deed is barred by the doctrine of laches.

Appellants also ask us to consider the following issue:

Did the lower court err in disregarding appellant Kembels' expert's testimony of the diminuation [sic] of the value of appellants' residence.

Brief for Appellants at 6.

At the outset, we note that our court must accept the findings of the court below with respect to the credibility of the witnesses. *Bigham v. Wenschhof*, 295 Pa.Super. 146, 149, 441 A.2d 391, 392 (1982). The trial judge evaluated the expert's testimony in light of the total circumstances of the case and concluded that the evidence was insufficient to support the claimed loss of value. After a thorough review of the evidence, and particularly of the expert's testimony, we conclude that the trial judge's findings in this regard are supported by the record.

Appellants' remaining issues deal with the lower court's discussion of their nuisance claim:

Did the lower court err in applying improper legal standards to the facts in reaching its opinion regarding the presence of a nuisance and the abatement of the same.

Did the lower court err in its rendition of the standard of proof required to be presented by appellants concerning noise and its effects.

Did the lower court err in rendering an opinion concerning the nonexistence of a nuisance against the weight of evidence.

Brief for Appellants at 4, 5 and 7.

■ First, we believe that appellants' complaint alleged a private nuisance and not a public nuisance as stated by the trial judge. Lower ct. op., 10–22–81, at 12. In *Waschak v. Moffat,* 379 Pa. 441, 109 A.2d 310 (1954), the Pennsylvania Supreme Court adopted section 822 of the Restatement (Second) of Torts [3] as the test to determine the existence of a private nuisance. That section provides as follows:

§ 822. **General Rule**

One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either

(a) intentional and unreasonable, or

(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

■ The Restatement defines the extent of the invasion necessary to incur liability as follows:

§ 821F. **Significant Harm**

There is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose.

The Comment to this section further explains the meaning of "significant harm:"

c. *Significant harm.* By significant harm is meant harm of importance, involving more than slight inconvenience or petty annoyance. The law does not concern itself with trifles, and therefore there must be a real and

---

**3.** We recognize that the *Moffat* court actually adopted the version of § 822 that appeared in the *first* Restatement of Torts. The substantive differences between the two versions, however, are minimal. Thus, we will refer to Restatement (Second). *See Hughes v. Emerald Mines Corp.,* 303 Pa.Super. 426, 433–34, 450 A.2d 1, 4–5, (1982).

appreciable invasion of the plaintiff's interests before he can have an action for either a public or a private nuisance. . . . [I]n the case of a private nuisance, there must be a real and appreciable interference with the plaintiff's use or enjoyment of his land before he can have a cause of action.

. . . .

When [the invasion] involves only personal discomfort or annoyance, it is sometimes difficult to determine whether the invasion is significant. The standard for the determination of significant character is the standard of normal persons or property in the particular locality. If normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable, then the invasion is significant.

Thus, the standard to be applied instantly is whether or not the appellees' business would cause "significant harm" to a person of "normal" or reasonable sensitivities.

In its opinion, the trial court stated:

While the defendants' business may have aesthetical shortcomings, it is nonetheless, a legal business with respect to which the creation of some noise and interference to neighbors will be inevitable, but which is not inherently injurious to the health of the public. . . . The issue is not whether the business creates noise or odors but whether the noise or odors created are of an injurious level. The plaintiffs have presented no calculated readings to establish whether the noise or fumes are at a level that is environmentally unsafe or injurious to health, i.e., decibel readings of noise or readings of environmental pollution directly related to the business. A Court of equity must demand an extremely clear case of unquestionable injurious conduct or interference which has been unnecessarily created in the operation of an activity which is of little if any benefit to the general public.

Lower ct. op., 10–22–81, at 20.

■ It is clear that appellees' actions need not be injurious to health in order to be classified as a nuisance. *See*

*Smith v. Alderson,* 262 Pa.Super. 387, 389, 396 A.2d 808, 810 (1979) (a nuisance may be found where there is an "unreasonable, unwarrantable, or unlawful use by a person of his own property which causes injury, damage, hurt, *inconvenience, annoyance* or *discomfort* to one in the legitimate enjoyment of his reasonable rights of person or property.") (emphasis added). We are satisfied that the trial court used the term "injurious" as the equivalent of "significantly harmful."

We find that the facts as reiterated in the trial judge's opinion are supported by the record. It is for the trier of fact to determine whether there was a significant invasion of appellants' enjoyment of their property, and, if such an invasion existed, whether the invasion was unreasonable. We are certain that the trial court applied the proper legal standard i.e., was there an invasion of appellants' enjoyment and use of their property such that it would cause "significant harm" to a "normal" or reasonable person. The trial court found no nuisance to exist and under the facts of this case, we agree.

Order affirmed.