663 A.2d 762

**METALIZED CERAMICS FOR ELECTRONICS, INC., Appellant,**

v.

**NATIONAL AMMONIA COMPANY, Appellee.**

**METALIZED CERAMICS FOR ELECTRONICS, INC., Appellee,**

v.

**NATIONAL AMMONIA COMPANY, Appellant (Two Cases).**

Superior Court of Pennsylvania.

Argued May 18, 1995.

Filed Aug. 16, 1995.

240

Bruno A. Muscatello, Butler, for Metalized Ceramics.

Philip M.P. Buttenfield, Pittsburgh, for National Ammonia Co.

Before POPOVICH, HUDOCK and OLSZEWSKI, JJ.

POPOVICH, Judge:

This is an appeal from the order of October 19, 1994, entered in the Court of Common Pleas of Butler County dismissing all claims by Metalized Ceramics For Electronics, Inc. ("Appellant") against National Ammonia Company ("Appellee") with prejudice. In this matter, we are asked to determine whether a provision of a contract entered into by the parties is unconscionable. We affirm.

The record reveals that appellant is a manufacturer of electronic components, and appellee is a supplier of anhydrous ammonia. Appellee does not manufacture anhydrous ammonia, but rather purchases the chemical from other suppliers and re-sells it to its own customers. RR. 55, 66–67, 292–93.

Appellant used anhydrous ammonia to achieve a particular atmospheric condition for its manufacturing furnace. In 1971, the parties entered into a requirements contract whereby all of appellant's purchases of anhydrous ammonia would be made from appellee. The agreement provided that the anhydrous ammonia was "to be metallurgical grade, testing not less than 99.999% NH3 minimum purity." RR. 132. The contract also

contained the following language which is the focus of dispute herein:

> "Quality to be subject to the Buyer's test before delivery to Buyer's tank; acceptance of delivery shall constitute a waiver by Buyer of all claims of defects from any cause whatsoever."

RR. 132. That language also appeared in receipts given to customers for each delivery made by appellee. RR. 281–82.

From 1971 to October of 1985, appellant purchased all of its anhydrous ammonia from appellee. The deliveries occurred at an approximate rate of once or twice a month during that period. Appellant never tested any delivery of anhydrous ammonia which it received from appellee. RR. 168.

In 1986, the parties' contractual relationship severed when appellant allegedly discovered that appellee had failed to supply metallurgical grade ammonia. In 1988, appellant brought suit against appellee and sought recovery for damages to its products and manufacturing equipment and for loss of income from accounts cancelled.

Thereafter, appellee moved for summary judgment. Appellee maintained that appellant's cause of action was barred by the statute of limitations. On February 5, 1991, the lower court entered an order granting partial summary judgment. The court below ruled that appellant's suit was limited to damages occurring within four (4) years preceding the filing of the complaint. On July 16, 1991, the lower court entered an order denying a supplemental motion for summary judgment filed by appellee. The court below determined that genuine issues of material fact existed as to whether any of the deliveries of ammonia were defective. Trial then commenced in October of 1993. However, the case ended in a mistrial.

Following a pre-trial conference on March 29, 1994, the lower court ordered that an evidentiary hearing be held to resolve an issue raised by appellant in an amended reply to new matter of whether the aforementioned language of the contract was unconscionable. The evidentiary hearing was held on July 15, 1994, and on September 14, 1994, the lower

court entered an order and a memorandum opinion holding that the language in question was not unconscionable.

On October 19, 1994, the court below entered an order and a memorandum opinion granting appellee's motion for final order and dismissing all claims against appellee with prejudice. This timely appeal ensued.[1]

■■■ The determination of whether a contract or clause is unconscionable is a question of law for the court. *Bishop v. Washington,* 331 Pa.Super. 387, 399, 480 A.2d 1088, 1094 (1984). Because the lower court held that the provision at issue was not unconscionable and dismissed this action with prejudice, our standard of review is as though a motion for summary judgment was granted.

> The standard of review in assessing the grant of a motion for summary judgment requires a court to view the record (including the pleadings and depositions, if any, answers to interrogatories, admissions on file and supporting affidavits) in a light most favorable to the non-moving party. *See McDonald v. Marriott Corp.,* 388 Pa.Super. 121, 564 A.2d 1296 (1989). Judgment shall be entered if the *record* shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.Civ.P. 1035(b).

*Zearfoss v. Frattaroli,* 435 Pa.Super. 565, 567, 646 A.2d 1238, 1239 (1994).

Herein, appellant contends that the lower court committed an error of law in finding that the provision at issue was not unconscionable. To buttress its assertion, appellant maintains that it was not commercially feasible to test anhydrous ammonia at its place of business. Moreover, appellant argues that

---

1. Appellee has also timely filed cross appeals from the orders entered by the lower court on February 5, 1991, and July 16, 1991. Because we affirm the order of October 19, 1994, which dismissed all claims against appellee with prejudice, we need not address appellee's arguments that the lower court erred in disposing of the motions for summary judgment filed by appellee. Accordingly, we dismiss appellee's cross appeals.

the provision in question improperly excluded remedies and was not written conspicuously.

In analyzing whether the contract's language is unconscionable, we direct our attention to Comment 1 to § 2302 of the Uniform Commercial Code ("U.C.C.").[2] That comment provides in pertinent part as follows:

This section is intended to allow the court to pass directly on the unconscionability of the contract or particular clause therein and to make a conclusion of law as to its unconscionability. The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. *The principle is one of prevention of oppression and unfair surprise . . . and not of disturbance of allocation of risks because of superior bargaining power.*

13 Pa.C.S.A. § 2302, Comment 1 (emphasis added).

■ "[W]e recognize the rule that a contract or a clause in a contract is to be considered unconscionable if there is 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other.' " *Beckman v. Vassall–Dillworth Lincoln–*

2. Section 2302 of the U.C.C. reads as follows:
   § 2302. Unconscionable contract or clause
   (a) Finding and authority of court.—If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may:
       (1) refuse to enforce the contract;
       (2) enforce the remainder of the contract without the unconscionable clause; or
       (3) so limit the application of any unconscionable clause as to avoid any unconscionable result.
   (b) Evidence by parties.—When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.
   13 Pa.C.S.A. § 2302.

*Mercury Inc.,* 321 Pa.Super. 428, 437, 468 A.2d 784, 788–89 (1983), citing *Witmer v. Exxon Corp.,* 495 Pa. 540, 551, 434 A.2d 1222, 1228 (1981); *Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C.Cir.1965).

Appellant maintains that it had no meaningful choice because the testing available to it was inaccurate and unsafe. Appellant argues, "[a]ny testing from a tanker truck would cause every shipment to be rejected because of the inability to perform the test without drawing water into the test sample." Appellant's Brief at 16. Further, appellant asserts that an environmental response team must be available during the testing of ammonia and that a spill could result in an evacuation of an area of two (2) miles.

At the evidentiary hearing on July 15, 1994, Mark Tanner, who is Vice President of Tanner Industries of which National Ammonia is a division, testified about a procedure for evaluating the chemical's purity that was available to customers since 1971 and was simple, accurate and safe. R.R. 282–85, 289–90, 295–96, 305–07. The court below found that evidence credible and rejected appellant's contention that it had no meaningful choice. Trial Opinion at 7. Upon examination, we find that the lower court's determination of credibility is supported by the record and, thus, we decline to disturb its finding. *See Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.,* 535 Pa. 469, 477, 636 A.2d 156, 160 (1994) (absent an abuse of discretion, supreme court is bound by hearing court's assessment of credibility of witnesses); *Kembel v. Schlegel,* 329 Pa.Super. 159, 165, 478 A.2d 11, 14 (1984) (superior court must accept the findings of the lower court with respect to the credibility of witnesses).

Appellant also maintains that the provision at issue is unconscionable since it is not conspicuous and excludes all remedies. The court below determined that the language in question was conspicuous. Trial Opinion 9/14/94 at 7. The U.C.C. defines "conspicuous" as follows:

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.

A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous.

Language in the body of a form is conspicuous if it is in larger or other contrasting type or color. But in a telegram any stated term is conspicuous.

Whether a term or clause is conspicuous or not is for decision by the court.

13 Pa.C.S.A. § 1201.[3]

■ Here, the provision is neither of larger print nor of different shade than the remaining language of the contract which is two pages in length. In no way is the language in question highlighted or emphasized. Moreover, the language at issue is not set apart by its own paragraph, but rather is located within a lengthy paragraph which addresses other matters. RR. 181–82. The provision fails to stand out in contrast to the remaining language of the contract. *Compare Keblish v. Thomas Equipment, Ltd.*, 427 Pa.Super. 93, 628 A.2d 840 (1993) (disclaimer was not conspicuous where language was imbedded within body of contract and was the same size and color as the remainder of the contract language). Consequently, we conclude that the lower court erred in finding that the language in question was written conspicuously.

■ Although the provision is not conspicuous, we, nevertheless, reject appellant's argument that it is unconscionable. We find that the nature of the provision in question coupled with the circumstances surrounding the commercial relationship compels us to rule in favor of appellee.[4]

---

**3.** Comment 10 to § 1201 of the U.C.C. provides, "[t]his is intended to indicate some of the methods of making a term attention-calling. But the test is whether attention can reasonably be expected to be called to it." 13 Pa.C.S.A. § 1201, Comment 10.

**4.** Our research of Pennsylvania law reveals that courts have enforced contractual provisions even where the language at issue was not written conspicuously. *See K & C, Inc. v. Westinghouse Electric Corp.*, 437 Pa. 303, 263 A.2d 390 (1970) (provision was not unconscionable where loss was commercial in nature, parties were experienced and possessed equal bargaining power); *Jim Dan, Inc. v. O.M. Scott & Sons Co.*, 785 F.Supp. 1196, 1198 n. 1 (W.D.Pa.1992) (although court finds that

As to the nature of the provision in question, we construe its language not as an exclusion of remedies and warranties, but rather as a limitation or a condition precedent to recovery. The enforceability of a limitation of remedy is governed by § 2719 of the U.C.C. That section provides as follows:

**§ 2719. Contractual modification or limitation of remedy**

**(a) General rule.**—Subject to the provisions of subsections (b) and (c) and of section 2718 (relating to liquidation or limitation of damages; deposits):

(1) The agreement may provide for remedies in addition to or in substitution for those provided in this division and may limit or alter the measure of damages recoverable under this division, as by limiting the remedies of the buyer to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts.

(2) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

**(b) Exclusive remedy failing in purpose.**—Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title.

**(c) Limitation of consequential damages.**—Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

13 Pa.C.S.A. § 2719. "Section 2719(c) cannot be used to relieve an experienced merchant of the misfortunes of his or her own poor business practices." *Jim Dan, Inc., supra* at 1199.

The language in question clearly and expressly provides that remedies are unavailable to appellant only in the event

language in question was conspicuous, it notes that conspicuousness is not required for a limitation of remedies clause).

that it fails to inspect the ammonia. The provision does not affect remedies available to appellant where appellant tests the ammonia and finds it defective. Thus, the provision does not in and of itself bar appellant from recovering damages.

■ The essential purpose of the provision is to insure that impure ammonia could be identified before it was delivered into appellant's storage tank. As correctly noted by appellee, "Had [appellant] been able to identify the non-conforming delivery and reject it, under the contract [appellee] would necessarily have had to replace it, since [appellee] agreed in the contract to supply all of [appellant's] requirements for ammonia." Appellee's Brief at 31. We find that the clause in question has not failed of its essential purpose. *Compare Jim Dan, Inc., supra* at 1199–1200 (limitation clause did not fail of its essential purpose where it merely allocated risks among the parties).

In regard to the commercial setting, the record is devoid of facts which suggest that the parties had unequal bargaining power. In *Vasilis v. Bell of Pennsylvania,* 409 Pa.Super. 396, 400, 598 A.2d 52, 54 (1991), our court observed:

> Courts have upheld limitation of damage provisions in sales contracts between merchants or experienced business concerns because there is no disparity between such entities in either bargaining power or sophistication. *See K & C, Inc. v. Westinghouse Electric Corp.,* 437 Pa. 303, 263 A.2d 390 (1970) (buyers were an experienced attorney and the owner of a used furniture business who dealt with the renovation and sale of the type of machines being purchased); *Chatlos Systems, Inc. v. National Cash Register Corp.,* 635 F.2d 1081 (3rd Cir.1980) (buyer was a manufacturer of complex electronic equipment who purchased a defective computer system).

In the case at bar, both parties were experienced business entities. As we determined above, on-site testing was available to appellant. Thus, appellant had control over the quality of ammonia it accepted from appellee. We agree with the lower court's assessment that "both parties were, or should

have been, aware of the feasibility of on-site testing of ammonia prior to signing a contract which placed such heavy significance on such testing." Trial Opinion 9/14/94 at 6. We note that appellant does not assert that the provision at issue was a matter of dispute or subject to negotiation before the agreement was entered into by the parties. *Compare Vasilis, supra* (provision in question was not a matter of concern before parties entered into contract). Additionally, appellant does not allege fraud or incompetence to excuse itself from the terms of the contract. *Compare Jim Dan Inc., supra* at 1200 (merchant had duty to read contract before signing it). Upon signing the contract in 1971, appellant failed to undertake any testing of the ammonia from 1971 to 1985, even though it was apprised by each delivery receipt of its duty to conduct its own inspection.

From our examination of the record, we conclude that the lower court properly determined that the provision in question was not unconscionable. Hence, we affirm its order dismissing all claims against appellee with prejudice.

Order affirmed.

OLSZEWSKI, J., files a concurring opinion.

OLSZEWSKI, Judge, concurring.

We concur in the result reached by the majority, but write separately in order to clarify a distinction in the law of unconscionability which the arguments of appellant Metalized Ceramics for Electronics (MCE) have obscured.

While the quasi-equitable doctrine of unconscionability defies precise definition, courts and commentators have recognized that it comprises two distinct aspects: one procedural, and the other substantive. *See generally* James J. White & Robert S. Summers, Uniform Commercial Code §§ 4–1 to 4–9 (3d ed. 1988). *Procedural unconscionability,* which our Supreme Court has described as "an absence of meaningful choice on the part of one of the parties," relates to the process by which the parties enter into the challenged contract. *Witmer v. Exxon Corp.,* 495 Pa. 540, 551, 434 A.2d 1222, 1228

(1981); *Denlinger, Inc. v. Dendler,* 415 Pa.Super. 164, 177, 608 A.2d 1061, 1068 (1992). *Substantive unconscionability,* on the other hand, relates to the result of that process; *i.e.,* the court reviews the terms of the contract to determine whether they are "unreasonably unfavorable to the other party." *Witmer,* 495 Pa. at 551, 434 A.2d at 1228. Both aspects should be present for a contract to be deemed unconscionable. *See id.* ("Unconscionability has generally been recognized to include [a procedural element] *together with* [a substantive element]." (citation omitted, emphasis supplied)); *Denlinger,* 415 Pa.Super. at 177, 608 A.2d at 1068 (noting that the test for unconscionability is two-fold).

MCE contends that its contract with appellee National Ammonia Company (National) was unconscionable because of a clause which provided that MCE waived all claims of defects by accepting delivery. In support of this claim, MCE presents three separate arguments: 1) the clause at issue was inconspicuous, 2) the clause unfairly destroyed its remedies in case of breach, and 3) MCE's inability to inspect the shipments before acceptance left it with no meaningful choice.

Applying the distinction outlined above, we find that the first of these arguments presents a claim of procedural unconscionability. MCE essentially asserts that regardless of the actual terms of the clause, it did not meaningfully choose to agree to them because the clause was inconspicuous.

Similarly, we note that MCE's second argument is addressed squarely to the terms of the clause at issue, and thus presents a claim of substantive unconscionability. MCE in essence contends that because it unfairly limited MCE's remedies in case of breach, this clause was unreasonably favorable to National.

As to the last of the three arguments, we find that MCE here confuses the procedural and substantive aspects of unconscionability. MCE argues that because it could not possibly comply with the contractual terms, the contract left it without a meaningful choice. The relevant inquiry with regard to the "absence of meaningful choice," however, is not

whether the agreed-upon terms could be performed, but rather whether "the party signing the contract [ ] lacked a meaningful choice in accepting the challenged provision." *Denlinger, supra.* Thus, we find that the facts which MCE argues do not mesh with the law that it cites in support.

The majority has read MCE's argument on its facts, *i.e.,* as an attack on the terms of this clause. We continue that analysis by noting that even if it were interpreted in accordance with the case law cited instead (*i.e.,* as a claim of procedural unconscionability), this argument would still fail. Our review of the record reveals that it supports the trial court's finding that both parties had commercial alternatives available to them. Opinion (Sept. 14, 1994) at 6–7.

MCE's manufacturing processes involve the bonding of metal layers to ceramic substrates, which must be conducted in atmospheres of pure nitrogen and hydrogen. Originally MCE had purchased these two gases separately; at some point, however, the company made a business decision to buy anhydrous ammonia instead. As nitrogen and hydrogen are the only elements present in this form of ammonia, MCE hoped to fulfill its requirements for those gases more economically by buying the ammonia and breaking it down into nitrogen and hydrogen. N.T. (July 15, 1994) at 7–9, 16. MCE conceded at the hearing below that it knew of other companies that could have supplied it with anhydrous ammonia. *Id.* at 17. Moreover, even if National had been the only source of anhydrous ammonia, MCE also conceded that it still had the option of continuing to purchase nitrogen and hydrogen separately. *Id.* at 25–26. Therefore, the record would not support a claim that MCE had no meaningful choice but to enter into this contract and accept its provisions.