STATE OF MAINE                                      SUPERIOR COURT

Cumberland, ss.


NORTHEAST PATIENTS GROUP, INC.
d/b/a Wellness Connection of Maine

                    Plaintiff

        v.                          Civil Action Docket No. CUMSC-CV-19-0357

CANWELL, LLC and CANWELL PROCESSING (MAINE), LLC

                    Defendants


ORDER ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

This case came before the court October 4, 2019 for oral argument on the Motion for A Preliminary Injunction filed September 13, 2019 by Plaintiff Northeast Patients Group, Inc, d/b/a Wellness Connection of Maine [WCM]. The Motion is opposed by Defendants Canwell, LLC and Canwell Processing (Maine), LLC [sometimes referred to collectively as Canwell]. The argument was electronically recorded.

Based on the entire record, the court denies the Motion for the reasons stated below.

*Background*

The array of corporate entities involved in this case is complicated if not bewildering, so it bears some initial elucidation. Plaintiff, which does business as Wellness Connection of Maine [WCM] operates four medical marijuana dispensaries

ATTORNEYS:
Matthew Warner, Esq. & Timothy Connolly, Esq. (for plaintiff)
Timothy Norton, Esq. (for defendants)

1

in Maine. Canwell, LLC is a multi-state cannabis business focusing on the alternative dosage or consumable side of the cannabis business model, as opposed to the flower or production side.

Both WCM and Canwell, LLC are shareholders, along with others, in an entity called WPMC, which, like Canwell, LLC, is a multi-state actor in the cannabis industry. WPMC is 97.4% owned by an entity called Acreage.

Defendant Canwell Processing (Maine), LLC [Canwell Maine] is the Canwell entity that focuses on Canwell operations in Maine. Canwell, LLC is the sole member of Canwell Maine.

In 2015, Plaintiff WCM entered into a contract with Defendant Canwell, LLC, the WPMC operating entity, and another entity called Wellness Connection Consulting, LLC [WCC]. The contract, titled Alternative Dosage Services Agreement, called for Canwell, LLC "or its designee" to provide various services and products in connection with WCM's Maine dispensaries. (The Alternative Dosage Services Agreement is sometimes also referred to in the parties' filings and this Order as the Dosage Services Agreement).

Canwell Maine was not a party to the Dosage Services Agreement, but Canwell LLC assigned its interest in the Agreement to Canwell Maine in 2018.

In July 2019, WCM terminated the Dosage Services Agreement with Canwell, based on what WCM claims was Canwell's failure to perform as required.

The "Governing Law and Venue" provision at section 13.7 of the Dosage Services Agreement provides for the "Agreement and the performance of all

2

obligations thereunder" to be governed by Maine law and provides that the parties submit "to the exclusive jurisdiction of the courts of Maine, with respect to any dispute between the parties pertaining to this Agreement."

Instead of challenging WCM's termination pursuant to that provision, Canwell invoked the arbitration provision of a different agreement to which WCM and Canwell, LLC (but not Canwell Maine) are parties—the "Amended and Restated Limited Liability Company Agreement of the Wellness & Pain Management Connection, LLC" dated October 26, 2015 [the Amended WPMC Operating Agreement].

The Amended WPMC Operating Agreement at section 16.3 provides that it is governed by Delaware law and also provides that the parties submit to the jurisdiction of the Rhode Island courts for purposes of "any litigation arising directly or indirectly from this Agreement, including enforcement of any arbitrator's award under section 17." Section 17 calls for disputes to be submitted to binding arbitration:

> The parties hereby agree that unless otherwise specifically required by law, any and all disputes, and legal and equitable claims between or among the Shareholders, the Directors, the officers, the Company, or any of them, or any combination of them, which relate to the rights and obligations of such Persons under the terms of this Agreement, any agreement contemplated hereby, or any future agreement, understanding or instrument to which two or more such Persons may be parties, shall be submitted to binding arbitration in Providence, Rhode Island in accordance with the commercial rules of the American Arbitration Association. Any Person who commences such arbitration hereunder or any litigation in violation of the terms hereof, and fails to prevail, shall be liable for all reasonable costs and expenses of the arbitration or litigation, including without limitation the fees of the arbitrator(s) and legal counsel to all parties, and witness fees of all parties to the proceeding.

3

The central question at hand is whether the Amended WPMC Operating Agreement's arbitration provision modified or superseded the provision of the Dosage Services Agreement requiring disputes to be resolved in the courts of Maine.

Canwell says WCM's termination of the Dosage Services Agreement is an arbitrable dispute under the Amended WPMC Operating Agreement. Canwell points to the "future agreement" clause in Section 17. *See* Amended WPMC Operating Agreement § 17 (". . . any agreement contemplated hereby, or any future agreement, understanding or instrument to which two or more such Persons may be parties, shall be submitted to binding arbitration . . ."). Although the Dosage Services Agreement was signed before the Amended WPMC Agreement, the same "future agreement" clause appeared in Section 17 of the original Operating Agreement for WPMC, signed in 2012 ["the Original WPMC Operating Agreement"].[1] Therefore, Canwell claims that the Dosage Services Agreement is a "future agreement" that, as soon as it was signed, became subject to the 2012 WPMC Operating Agreement's Section 17 arbitration provision, and carried over into the 2015 WPMC Operating Agreement.

WCM says the Dosage Services Agreement is a freestanding contract covering a specific, limited set of projects and services in Maine and is unconnected to the Original and Amended WPMC Operating Agreements. WCM points out that neither the Dosage Services Agreement nor the Amended WPMC Operating Agreement

---

[1] The only substantive difference between the Section 17 provision in the 2012 original WPMC Operating Agreement and the counterpart provision in the 2015 Amended WPMC Operating Agreement is that the 2012 version called for arbitration in Maine, whereas the 2015 version calls for arbitration in Rhode Island.

refers in any way to the other, and the two agreements involve different subject matters.

In the Rhode Island Superior Court, Canwell has filed a Petition seeking to compel WCM and WPMC to arbitrate all issues relating to WCM's termination of the Dosage Services Agreement. *See Canwell, LLC et als. v. High Street Capital Partners, LLC et als.*, R.I. Super. Ct., Kent Cty., Docket No.KM-2019-0948, Miscellaneous Petition for Mandating Arbitration Pursuant to Contract and Request for Stay of Proceedings in Aid of Arbitration.

The Petition includes as an exhibit a Demand for Arbitration that sets forth 10 separate "causes of action" to be arbitrated. Most relate to the Dosage Services Agreement, but they include claims that Acreage has breached fiduciary obligations arising from its 97.4% ownership interest in WPMC and improperly caused a "compulsory redemption" of Canwell, LLC's 0.1% interest in WPMC.

Counsel have advised that the Rhode Island Superior Court is scheduling a procedure to address the arbitrability of the "causes of action" in Canwell's Demand for Arbitration.

*Analysis*

WCM's Motion for a Preliminary Injunction seeks to enjoin Canwell from pursuing arbitration of any issues relating to WCM's termination of the Alternative Service Dosage Services Agreement, as to which WCM contends the Maine courts have exclusive jurisdiction.

5

"A party seeking injunctive relief by a temporary restraining order or a preliminary injunction has the burden of demonstrating to the court that four criteria are met. The moving party must demonstrate that (1) it will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting the injunctive relief would inflict on the other party; (3) it has a likelihood of success on the merits (at most, a probability; at least, a substantial possibility); and (4) the public interest will not be adversely affected by granting the injunction." *Bangor Historic Track, Inc. v. Dep't of Agriculture, Food & Rural Resources*, 2003 ME 140, ¶9, 837 A.2d 129, *citing Dep't of Envtl. Prot. v. Emerson*, 563 A.2d 762, 768 (Me. 1989); *Ingraham v. Univ. of Maine at Orono*, 441 A.2d 691, 693 (Me. 1982).

The two factors that appear most relevant are the irreparable harm and likelihood of success factors.

The public interest factor weighs in both parties' favor. It favors Canwell to the extent arbitration is a preferred dispute resolution process. It favors WCM to the extent that Maine has an interest in the adjudication of disputes arising under contracts to be performed in Maine and affecting Maine residents.

The balance of harms factor also seems in equipoise—Canwell claims harm if this court deprives it of its right to arbitrate in Rhode Island what is arbitrable under the Amended WPMC Operating Agreement, whereas WCM claims harm if deprived of its right to litigate in Maine what is subject to the Maine courts' exclusive jurisdiction under the Alternative Dosage Services Agreement.

In terms of the two other injunctive criteria, WCM has shown a likelihood of success but not irreparable harm.

The most direct refutation of Canwell's argument for arbitration of WCM's termination of the Dosage Services Agreement is the obvious one—the Dosage Services Agreement unambiguously confers exclusive jurisdiction over disputes upon the Maine courts. WCM has a simple and straightforward explanation for why the Agreement so provides—the parties agreed to it. In contrast, Canwell has not offered any explanation for why, if the parties to the Dosage Services Agreement intended their disputes to be arbitrated, the Agreement plainly says otherwise.

Canwell has two arguments for why the Section 17 arbitration provision in the Original and Amended WPMC Operating Agreements applies, but neither works.

One argument is that the parties to the Amended WPMC Operating Agreement, signed 25 days after the Dosage Services Agreement, agreed to modify the dispute provision of the Dosage Services Agreement and have disputes thereunder subject to Section 17 arbitration. The problem with that argument is that nothing in the Amended WPMC Operating Agreement says that. In fact, it says the opposite, in effect: the broad and unambiguous merger clause at section 16.7 says that the contents of the Amended WPMC Operating Agreement reflect the entire understanding of the parties regarding the "subject matter" of the Agreement.

For similar reasons, Canwell's other argument—that the Dosage Services Agreement became subject to Section 17 arbitration by virtue of the "future agreements" provision in the original WPMC Operating Agreement—faces an equally

7

uphill path. If the parties had thought that, they would have made sure that the 2015 Amended WPMC Operating Agreement said so, to save the alleged agreement from the operation of the merger clause. (Canwell's "future agreement" argument also may be hampered by the fact that the Canwell entities do not appear to have been party to the Original WPMC Operating Agreement).

A broader point against Canwell's position is that the Dosage Services Agreement does, as WCM contends, appear to be a freestanding contract unrelated to either version of the WPMC Operating Agreement. As noted above, the Amended WPMC Operating Agreement makes no reference whatever to the Dosage Services Agreement that WCM and Canwell, LLC had executed just 25 days before. That fact, along with the merger clause, supports WCM's contention that the two agreements do not relate to each other.

Indeed, the Dosage Services Agreement does not seem to have anything to do with the WPMC operating agreements in terms of purpose or subject matter or place of performance. It is also hard to envision how or why the Dosage Services Agreement, to which WPMC is a party, could be part of the WPMC Operating Agreement under which WPMC exists and functions.

For these reasons, the record supports WCM's contention that the parties to the Dosage Services Agreement understood and agreed that disputes arising thereunder would be resolved in the courts of Maine pursuant to the dispute resolution provision in the Agreement, not arbitrated in Rhode Island pursuant to the dispute resolution provisions of a different, unrelated contract.

8

Thus, the question of injunctive relief comes down to the irreparable harm criterion.

The parties have submitted extensive authority for their respective positions on whether being forced to arbitrate can constitute irreparable harm for purposes of injunctive relief. The gist of the collective authority is that some courts say that for WCM to be forced into arbitrating issues it never agreed to arbitrate can be deemed irreparable harm, whereas others say any harm could never be deemed irreparable because any resulting injury can be remediated with money damages. The Supreme Judicial Court of Maine does not appear to have taken a position in which of these is the law.

This court is not prepared to say that for a party to be required to arbitrate a dispute that it likely did not agree to arbitrate always results in irreparable harm. However, the court is also not ready to say it can never result in irreparable harm.

Rather, whether being required to arbitrate without an agreement to do so inflicts irreparable harm depends on the facts and circumstances of the case.

WCM's essential argument is that for it to be forced to arbitrate the breach and termination issues arising under the Dosage Services Agreement would cause it irreparable harm by distracting its management from more pressing and important matters.

On the present record, the circumstances weigh against a finding of irreparable harm:

9

- The Rhode Island courts under section 17 of the Amended WPMC Operating Agreement, and/or this court under section 13.8 of the Alternative Dosage Services Agreement can require Canwell to pay WCM's legal fees, witness costs, arbitration costs should Canwell's Petition and Demand for Arbitration be deemed improvident or improper. Any additional provable loss by WCM attributable to a breach by Canwell could result in a damages award.

- The fact that WCM management may have to take time away from other endeavors to deal with arbitration is not itself irreparable harm. There would need to be a concrete irreparable consequence of the diversion of their time and energy—say, the permanent loss of a specific business opportunity that cannot be quantified in terms of monetary value.

- Perhaps most significant, the possibility of any harm, much less irreparable harm, is speculative. Like Maine, Rhode Island requires proof of an agreement to arbitrate before arbitration will be compelled. The Rhode Island Superior Court will be addressing the same arguments against arbitration that WCM raises here, so the denial of injunctive relief here does not necessarily mean that arbitration will be required in Rhode Island.

For all of these reasons, IT IS ORDERED:

1. Plaintiff's Motion for a Temporary Injunction is denied.

10

2. There being a pending application to transfer this case to the Business and Consumer Court, this court will take no action for now on the Defendants' Motion to Dismiss. A further conference will be scheduled if the case is not transferred.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated October 7, 2019

A. M. Horton, Justice