Robert E. LYTLE and Judith Lytle, Appellants,

v.

CITIFINANCIAL SERVICES, INC., f/k/a Commercial Credit Plan Consumer Discount Company, Appellee.

Superior Court of Pennsylvania.

Argued Nov. 27, 2001.
Filed Oct. 24, 2002.

Robert M. Firkser, Media, for appellant.

Marilyn Heffley, Philadelphia, for appellee.

BEFORE: McEWEN, P.J.E., JOHNSON, and JOYCE, JJ.

OPINION BY McEWEN, P.J.E.:

¶ 1 This appeal from an order dismissing, in response to the preliminary objections of CitiFinancial Services, Inc., f/k/a Commercial Credit Plan Consumer Discount Company (hereinafter "CitiFinancial"), the class action complaint filed by Robert and Judith Lytle, presents substantial questions concerning, *inter alia*, the extent to which federal law requires state courts to allow the use of a pre-dispute arbitration clause in a consumer contract to circumvent state consumer protection statutes.[1] While the contentious nature of this issue inspired us to review all of the relevant decisions in this evolving contest in order to resolve the question[2] presented, the procedural posture of this case requires that we vacate the order of dismissal and remand the record to permit the trial court, in the first instance, to receive and entertain evidence on certain defenses interposed by the parties.

¶ 2 Appellants, Robert and Judith Lytle, husband and wife who resided in Delaware County, Pennsylvania, applied to Appellee CitiFinancial for a loan to be secured by a mortgage on their residence. The record presently before this Court consists only of the class action complaint filed by the Lytles, the preliminary objections filed by CitiFinancial, and the Lytle's response to those objections. The record does not provide any information concerning the process by which appellants applied for and obtained approval of the loan at issue in this litigation, *or* any information concerning fees paid or documents exchanged prior to settlement on the loan, *or* what information, if any, concerning the terms of the loan, was provided to the Lytles when they applied for the loan or at any other time prior to settlement on May 28, 1997. Settlement apparently occurred on

---

1. The use of pre-dispute arbitration clauses to defeat and eviscerate state consumer protection statutes has been discussed in a number of law journal articles: *"Pre–Dispute Mandatory Arbitration in Consumer Contracts: A Call for Reform"*, 38 Hous.L.Rev. 1237 (2001); *"As Mandatory Binding Arbitration Meets the Class Action, Will the Class Action Survive?"* Sternlight, Jean R., 42 Wm. and Mary L.Rev.1 (2000); *"Rethinking the Constitutionality of the Supreme Court's Preference for Binding Arbitration: A Fresh Assessment of Jury Trial, Separation of Powers, and Due Process Concerns"*, Sternlight, Jean. R., 72 Tul.L.Rev. 1 (1997). See also: *"A Shield Against Arbitration: U.C.C. Section 2–207's Role in the Enforceability of Arbitration Agreements Included with Delivery of Products"*, 51 Ala.L.Rev. 821 (2000); *"'Unfair' Arbitration Clauses"*, Drahozal, Christopher R., 2001 U.Ill.L.Rev. 695 (2001); *"Arbitration of Consumer Claims: The Sad Case of Two–Time Victim Terry Johnson or Where Have You Gone Learned Hand?"*, Cappalli, Richard B., 10 B.U.Pub.Int.L.J. 366 (2001); Schwartz, *"Enforcing Small Print to Protect Big Business: Employee and Consumer Rights Claims in an Age of Compelled Arbitra-*

*tion"*, 1997 Wisc.L.Rev.33 (1997); Budnitz, *"Arbitration of Disputes between Consumers and Financial Institutions: A Serious Threat to Consumer Protection"*, 10 Ohio St.J. on Dispute Resolution 267 (1995); *"Arbitration Clauses in Consumer Contracts: Building Barriers to Consumer Protection"*, Frederick L. Miller, 78 Ml Bar Jnl., 302 (1999).

2. We summarily dismiss on the basis of the trial court opinion, the claims of appellants (1) that Act 6 is applicable to a mortgage in excess of $50,000, see 41 P.S. § 101; *Peoples Bank v. Dorsey*, 453 Pa.Super. 94, 683 A.2d 291, 296 n. 6 (1996), *appeal denied*, 548 Pa. 628, 693 A.2d 967 (1997), and (2) that a court may not dismiss a complaint asserting claims which are subject to arbitration, but must stay the matter. *See, e.g.: Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 178 (3rd Cir.1998), *cert. denied*, 525 U.S. 1139, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). We do not reach, and express no opinion, on the issue of whether a claim under Sections 502 and 503 of the Act can be brought as a class action.

May 28, 1997, at which time the Lytles executed a mortgage, as well as a security agreement and note [3] which obligated them to make 180 payments of $1,455.15 each, commencing July 2, 1997, in return for a loan in the amount of $121,236.53 at the annual percentage rate of 12%.

¶ 3 The esteemed Judge Harry J. Bradley has provided a succinct recitation of the facts contained in the pleadings:

This is a class action. Plaintiffs' complaint alleges claims against CitiFinancial for: violation of the federal Truth–in–Lending Act (Count I); violation of Pennsylvania Act of January 30, 1974 (hereinafter referred to as "Act 6") (Count II); violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count III); breach of contract (Count IV); unjust enrichment (Count V); and fraud (Count VI).

Plaintiffs' complaint stems from a loan arrangement plaintiffs entered into with CitiFinancial on May 28, 1997. Plaintiffs borrowed the principal amount of one hundred twenty-three thousand six hundred sixty-one dollars and twenty-six cents ($123,661.26). This loan was secured by a mortgage on plaintiffs' residence. Plaintiffs made the installment payments as provided by the loan agreement. On or about August 18, 1998, plaintiffs refinanced and made full prepayment to CitiFinancial. In order to make full payment and to cause the mortgage to be satisfied, CitiFinancial required plaintiffs pay defendant the total amount of one hundred twenty-four thousand five hundred fifty-four dollars ($124,554.00) comprised of the following charges: principal balance unearned in-

terest [of $9,575.13]; prepayment penalty [of $7,123.75]; release fee [of $18.00]; and unspecified charges [of $1,862.19].

The complaint avers that defendant's actions in collecting a prepayment penalty and unearned finance charges when a mortgage is satisfied early violate state and federal laws as well as Pennsylvania common law. Plaintiffs filed their complaint as a class action alleging that they represented the class of persons who paid CitiFinancial a prepayment penalty and unearned finance charges when a mortgage loan was paid off early. Defendant filed preliminary objections to plaintiffs' complaint which were sustained [based on the existence of an arbitration agreement contained in the loan documents signed by the plaintiffs].

¶ 4 The preliminary objections which prompted dismissal of the complaint provided:

1. On or about August 18, 2000, Plaintiffs Robert E. Lytle and Judith Lytle ("Plaintiffs") filed a Complaint alleging claims for violations of the Truth in Lending Act, Pennsylvania Act of January 30, 1974 (P.L. 13, No. 6, hereinafter "Act 6"), the Pennsylvania Unfair Trade Practices Act, breach of contract, fraud and unjust enrichment. A true and correct copy of Plaintiffs' Complaint is attached hereto as Exhibit "A".

2. Plaintiffs' Complaint stems from a loan transaction entered into between Plaintiffs and CitiFinancial on May 28, 1997. *See* Complaint ¶ 15, Ex. A.

3. Plaintiffs seek to bring this action on behalf of "the entire class of persons

---

**3.** The loan documents reflect that appellants at settlement were charged $2,424.73 as a loan discount fee, $873.75 for the title insurance by a business affiliated with CitiFinancial, and $9,669.32 for credit life insurance, and that the total amount of interest to be paid over the life of the loan appears as $140,690.47. One would not be surprised were the insurer, to whom the $9,669.32 credit life insurance premium was paid, an affiliate of appellee CitiFinancial.

similarly situated." *See* Complaint ¶¶ 5–13, Ex. A.

## PRELIMINARY OBJECTION TO ALL COUNTS OF THE COMPLAINT PURSUANT TO PA.R.CIV.P. 1028(6)

4. On May 28, 1997, Plaintiffs executed and delivered to CitiFinancial a Disclosure Statement, Note and Security Agreement (the "Agreement"). *See* Complaint ¶ 15, Ex. A. A true and correct copy of the Agreement is attached hereto and incorporated herein as Exhibit "B."

5. Inherent in this Agreement, is an Arbitration Provision which mandates that all claims, subject to two exceptions which are inapplicable here, shall be resolved by binding arbitration. A true and correct copy of the Arbitration Provision is attached hereto as Exhibit "C."

6. The binding Arbitration Provision precludes Plaintiffs from litigating this matter in this Court. *See* Arbitration Provision, ¶ 3, Ex. C.

## DEMURRER TO COMPLAINT: ACT 6 PRECLUDES CERTIFICATION OF A CLASS

7. Plaintiffs seek to bring this action on behalf of a class of people. *See* Complaint, ¶¶ 5–13, Ex.A.

8. Act 6 prohibits class certification of this action. *See* 41 P.S. § 504 (1999).

## DEMURRER TO COUNT II: PLAINTIFFS' MORTGAGE IS NOT A "RESIDENTIAL MORTGAGE" PURSUANT TO PENNSYLVANIA ACT OF JANUARY 30, 1974 (ACT 6)

9. Plaintiffs allege that CitiFinancial violated Pennsylvania Act of January 30, 1974 (hereinafter referred to as "Act 6"). *See* Complaint, ¶¶ 34–43, Ex.A.

10. Plaintiffs aver that the mortgage at issue is a "residential mortgage" under Act 6. *See* Complaint, ¶ 37, Ex. A.

11. Act 6 defines a "residential mortgage" as an "obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000) or less ..." 41 P.S. § 101 (1999).

12. Plaintiffs assert in their Complaint that the principal amount of the obligation was One hundred twenty-three thousand six hundred sixty-one dollars and twenty-six cents ($123,661.26), which clearly exceeds the statutory limit. *See* Complaint, ¶ 15, Ex. A.

13. Because the amount of the loan far exceeds the statutory limit of Act 6, the Second Count of Plaintiffs' Complaint is legally insufficient and must be dismissed.

**WHEREFORE,** Defendant CitiFinancial Services, Inc., f/k/a Commercial Credit Plan Consumer Discount Company respectfully requests that its Preliminary Objections be sustained and that the Complaint be dismissed in its entirety. In the alternative, Defendant requests that Count II of the Complaint be dismissed because it is legally insufficient.

¶ 5 The trial court, in direct response to the preliminary objections, dismissed the complaint with prejudice and directed the parties to proceed to arbitration. Appellants claimed in their response to the preliminary objections, and now argue on appeal to this Court that this ruling was error as the arbitration provisions of the loan contract are unenforceable under Pennsylvania law.

¶ 6 The relevant portions of the Note executed by the Lytles on May 28, 1997, provided, inter alia:

*DEFAULT:* Borrower will be in default if he does not make any scheduled payment on time or fails to comply with the

provisions of any mortgage or the real property which secures this loan. If Borrower defaults, Lender may require Borrower to repay the entire unpaid Principal balance and any accrued interest at once. Lender's failure to exercise or delay in exercising any of its rights when default occurs does not constitute a waiver of those or any other rights under this agreement. **As permitted by Pennsylvania Law, Borrower agrees to pay actual and reasonable attorney's fees, court costs and other actual and reasonable costs incurred in foreclosing on the real property securing this loan.** Borrower will receive written notice at least 3 days prior to foreclosure. [emphasis supplied]

*LAW THAT APPLIES:* Pennsylvania law and federal law, as applicable govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

\* \* \* \*

*ARBITRATION PROVISION:*

**READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION.**

In consideration of Lender making the extension of credit described above and other good and valuable considerations, the receipt and sufficiency which is acknowledged by both parties, it is further agreed as follows:

**Definitions for Arbitration Provision.** As used in this Arbitration Provision ("Provision"), the following definitions will apply:

"You" or "Your" means any or all of Borrower(s) who execute this Provision, and their heirs, survivors, assigns, and representatives.

"We" or "Us" means Lender, any assignee, together with their respective corporate parents, subsidiaries, affiliates, predecessors, assignees, successors, employees, agents, directors, and officers (whether acting in their corporate or individual capacity).

"Credit Transaction" means any one or more past, present, or future extension, application, or inquiry of credit or forbearance of payment such as loan, retail credit agreement, or otherwise from any of Us to You.

"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes without limitation, anything that concerns:

- This Provision;
- Any past, present, or future Credit Transaction;
- Any past, present, or future insurance, service, or product that is offered in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product; or
- Any act or omission by any of Us regarding any Claim.

**Agreement to Arbitrate Claims.** Upon written request by either party that is submitted according to the applicable rules for arbitration, **any Claims except those specified below in this Provision**, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act; (ii) the Expedited Procedures of the Commercial Arbitration Rules of the American Arbitration

Association [4] ("Administrator"); and (iii) this Provision, unless both agree in writing to forgo arbitration. The terms of this Provision shall control any inconsistency between the rules of the Administrator and the Provision. You may obtain a copy of the arbitration rules by calling (800) 778–7879. Any party to this Provision may bring an action, including summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Such motion may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment. [emphasis supplied] Examples of Claims that are governed by this Agreement including those involving:

- The Truth in Lending Act and Regulation Z;
- The Equal Credit Opportunity Act and Regulation B;
- State insurance, usury, and lending laws; fraud or misrepresentation, including claims for failing to disclose material facts;
- Any other federal or state consumer protection statute or regulation;
- Any party's execution of this Provision and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

**Judgment.** Judgment upon any arbitration award may be entered in any court having jurisdiction.

**Claims Excluded from Arbitration. The following types of matters will** **not be arbitrated. This means that neither one of us can require the other to arbitrate:**

- **Any action to effect a foreclosure to transfer title to the property being foreclosed; or**

- **Any matter where all parties seek monetary damages in the aggregate of $15,000.00 or less in total damages (compensatory and punitive), costs and fees.** [emphasis supplied]

However, should either party initiate arbitration, the other party, at its option, may seek injunctive and monetary relief in arbitration. Participating in lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim.

Additional Terms.

*Administration of Arbitration.* Arbitration shall be administered by the Administrator, but if it is unable or unwilling to administer the arbitration, then J•A•M•S/Endispute, Inc. will administer any arbitration required under this Provision pursuant to its Streamlined Arbitration Rules and Procedures except for any appeal, which will be governed by Rule 23 of the Comprehensive Arbitration Rules and Procedures of J•A•M•S/Endispute, Inc.

*Place of Arbitration.* The arbitration shall be conducted in the county of Your residence, unless all parties agree to another location.

*Timing of Hearing.* The arbitration hearing shall commence within ninety (90) days of the demand for arbitra-

---

**4.** The arbitration clause initially provides for common law arbitration pursuant to the Rules of the American Arbitration Association ("AAA"). *Midomo Co., Inc. v. Presbyterian Housing Development Co.,* 739 A.2d 180, 183 (Pa.Super.1999); *Popskyj v. Keystone Insurance Co.,* 388 Pa.Super. 429, 565 A.2d 1184, 1189 (1989), *appeal denied,* 525 Pa. 602, 575 A.2d 567 (1990).

tion made to the Administrator in accordance with its rules.

*Appeal.* **Either You or We may appeal the arbitrator's award to a three-arbitrator panel selected through the Administrator, which shall reconsider de novo any aspect of the initial award requested by the appealing party.** The expedited procedures of the Administrator shall *not* govern any appeal.

An appeal will be governed by Rule 23 [5] of the Comprehensive Arbitration Rules and Procedures of J•A•M•S /Endispute, Inc.

*No Class Actions/No Joinder of Parties.* **You agree that any arbitration proceeding will only consider Your Claims. Claims by or on behalf of other borrowers will not be arbitrated in any proceeding that is considering Your Claims. Similarly, You may not join with other borrowers to bring Claims in the same arbitration proceeding, unless all of the borrowers are parties to the same Credit Transaction.** [emphasis supplied]

*Limitation on Punitive Damages.* If applicable law permits the award of punitive damages and the arbitrator authorizes such an award, any punitive damages awarded to You or Us **may not exceed the greater of $250,000.00 or three times the amount of actual compensatory damages awarded by the arbitrator.** [emphasis supplied]

*Depositions.* After a demand for arbitration is made, You and We may conduct a limited number of depositions by mutual agreement. Any disagreements over depositions will be resolved by the arbitrator.

*Costs.* The cost of any arbitration proceeding shall be divided as follows:

- The party making demand upon the Administrator for arbitration shall pay $125.00 to the Administrator when the demand is made.

- We will pay to the Administrator all other costs for the arbitration proceeding up to a maximum of one day (eight hours) of hearings.

- All costs of the arbitration proceeding that exceed one day of hearings will be paid by the non-prevailing party.

- **In the case of an appeal, the appealing party will pay any costs of initiating an appeal. The non-prevailing party shall pay all costs, fees, and expenses of the appeal proceeding and, if applicable, shall reimburse the prevailing party for the cost of filing an appeal.** [emphasis supplied]

- Each party shall pay his/her own attorney, expert, and witness fees and expenses, unless otherwise required by law.

---

5. Rule 23 of the Comprehensive Rules and Procedures of J•A•M•S/Endispute, Inc. provides: "Waiver of Hearing. The parties may agree to waive the oral hearing and submit the dispute to the Arbitrator for an Award based on written submissions and other evidence as the parties may agree." It merits mention that J•A•M•S/Endispute, Inc., is an entity owned by the very arbitrators who adjudicate disputes between the borrower and the very lender who assigns the disputes to J•A•M•S. Thus the arbitrators, in their role as owners, must seek to promote the goodwill of the lenders so as to develop and maintain a volume of business, namely, cases for adjudication. CitiFinancial is a supplier of cases, even, perhaps, a major source of business for J•A•M•S. It matters little whether it was Aesop or Confucius who counseled that *one should not bite the hand that feeds,* since the message is an apt reminder of the quite valid perception of a conflict of interest in the arbitration process.

**Right of Rescission.** You may rescind any Credit Transaction within three business days after closing by returning all proceeds (if any) to Us with a written notification of Your rescission. If You rescind a Credit Transaction within three business days after closing, You may also rescind this Provision as it applies to the Credit Transaction that You rescinded. This right to cancel the Credit Transaction is in addition to any other right to cancel a Credit Transaction You may have under Federal or State law, or as may have been communicated to You in writing by Us in any loan solicitation, advertisement or other marketing related document.

**Governing Law.** This Provision is governed by Federal law and by the laws of the state where the closing of the Credit Transaction took place, but only to the extent that such state laws are consistent or compatible with federal law.

**Severability.** If the arbitrator or any court determines that one or more terms of this Provision or the arbitration rules are unenforceable, such determination shall not impair or affect the enforceability of the other provisions of this Agreement or the arbitration rules.

**Special Acknowledgments.**

You understand and acknowledge by signing Your name to this Provision that (i) a court and/or jury will *not* hear or decide any Claim governed by this Provision, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will constitute interstate commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ 1–9, (iii) discovery in any arbitration proceeding can be much more limited than in a court proceeding, (iv) the arbitrator may not give written reasons for his/her award, **(v) rights to appeal an arbitra-** tion award are very limited, and (vi) the rights of the parties hereunder may not be exactly mutual in all respects. [emphasis supplied]

**READ THE ABOVE ARBITRATION PROVISION CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION.**

/s/_____(Seal)
ROBERT E LYTLE Borrower
/s/_____(Seal)
JUDITH LYTLE Borrower

¶ 7 The Mortgage which was also executed by the Lytles at the May 28 settlement provided, inter alia:

\* \* \*

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited therein.

\* \* \*

NON–UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Upon Borrower's breach of any covenant or agreement of Borrower in this Mort-

gage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided by applicable law specifying, among other things: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) **that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceedings, and sale of the Property.** The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand **and may foreclose this Mortgage by judicial proceeding.** Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, and costs of documentary evidence, abstracts and title reports. [emphasis supplied]

¶ 8 The trial court judge concluded, based solely on the foregoing loan documents, that the arbitration provisions of the contract were not unconscionable and that the controversy between the parties was subject to arbitration pursuant to the Federal Arbitration Act, and thus dismissed the complaint.

¶ 9 The Federal Arbitration Act, 9 U.S.C. §§ 1–14 (hereinafter "FAA"), was enacted in 1925 in response to the common law doctrine which provided that arbitration clauses were revocable at will by either party to the contract. The Act has been more recently interpreted by the U.S. Supreme Court to preempt any state statutes which are specifically designed to limit or restrict arbitration clauses, preclude their use in certain types of contracts, or prohibit their enforcement. *Perry v. Thomas,* 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); *Southland v. Keating,* 465 U.S. 1, 12, 104 S.Ct. 852, 858–59, 79 L.Ed.2d 1 (1984).

The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it "does not require parties to arbitrate when they have not agreed to do so." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). See also *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ("The purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so"). Because the FAA is "at bottom a policy guaranteeing the enforcement of private contractual arrangements," *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement. *Id.* at 626, 105 S.Ct. 3346. While ambiguities in the language of the agreement should be resolved in favor of arbitration, *Volt,* 489 U.S., at 476, 109 S.Ct. 1248, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated. **"Arbitration under the**

[FAA] is a matter of consent, not coercion." *Id.* at 479, 109 S.Ct. 1248. *EEOC v. Waffle House, Inc.,* 534 U.S. 279, ——, 122 S.Ct. 754, 764, 151 L.Ed.2d 755, 769 (2002) (emphasis supplied throughout)(footnote omitted).

 ¶ 10 Our learned colleague, Judge John T.J. Kelly, astutely examined on behalf of this Court the federal policy espoused by a majority[6] of the U.S. Supreme Court requiring the enforcement of arbitration agreements, even those contained in consumer contracts:

> The Federal Arbitration Act (FAA) has been interpreted by the Supreme Court as mandating the enforcement of all arbitration agreements which "evidence a transaction involving commerce, unless they are revocable on contractual grounds." *Southland Corp. v. Keating,* 465 U.S. 1, 11–12, 104 S.Ct. 852, 858–59, 79 L.Ed.2d 1, 12 (1984) [footnote omitted]. The Court extended this principle of enforceability to the states, noting that if Congress did not intend states to be bound, the limiting language "evidenc[ing] a transaction involving commerce" would have been entirely superfluous. *Id.*

> \* \* \* \*

> In *Southland Corp. v. Keating, supra,* which extended federal enforceability standards to state courts, the Court noted that the Federal Arbitration Act was motivated by a congressional purpose to overcome the rule that courts of equity will not enforce arbitration agreements. [footnote omitted] The Court noted that the resistance of many state courts was grounded solely in the tradition of English courts jealously maintaining their own jurisdiction. *See Southland Corp. v. Keating, supra,* 465 U.S. at 13, 104 S.Ct. at 859, 79 L.Ed.2d at 13–14.

> The *Southland Corp. v. Keating, supra,* established a general rule of broad enforceability for arbitration agreements, including a strong suggestion that arbitrators be allowed to dispense equitable relief. While this decision will force many states to reevaluate and reverse their historical disdain for arbitration, Pennsylvania's policy towards arbitration is entirely consistent with the United States Supreme Court's holding. In Pennsylvania, our courts' decisions have been governed by two basic, but hard to reconcile propositions: (1) arbitration agreements are to be strictly construed and ... such agreements should not be extended by implication and (2) when the parties agree to arbitration in a clear and unmistakable manner, then every reasonable effort will be made to favor such agreements. *See Emmaus Municipal Auth. v. Eltz,* 416 Pa. 123, 125, 204 A.2d 926, 927 (1964); *Hassler v. Columbia Gas Transmission Corp.,* 318 Pa.Super. 302, 307, 464 A.2d 1354, 1356 (1983).

> *Dickler v. Shearson Lehman Hutton, Inc.,* 408 Pa.Super. 286, 596 A.2d 860, 862–863 (1991), *appeal denied,* 532 Pa. 663, 616 A.2d 984 (1992).

> "When one party to an agreement seeks to prevent another from proceeding to arbitration, judicial inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision." *Midomo,* 739

6. The modern expansive interpretation of the FAA, which raises complex issues of federalism, has not been embraced by Justices O'Connor, Scalia, or Thomas. *See: Allied-Bruce Terminix v. Dobson,* 513 U.S. 265, 282– 286, 115 S.Ct. 834, 844–846, 130 L.Ed.2d 753, 769–772 (1994) (Concurring Opinion of O'Connor, J., Dissenting Opinions of Thomas, Scalia, JJ.).

A.2d at 186 (quoting *Smith,* 687 A.2d at 1171). "If a valid arbitration agreement exists between the parties and appellant['s] claim is within the scope of the agreement, the controversy must be submitted to arbitration." *Goldstein v. Depository Trust,* 717 A.2d 1063, 1066 (Pa.Super.1998) (*quoting Messa v. State Farm Ins. Co.,* 433 Pa.Super. 594, 641 A.2d 1167, 1170 (1994)).

*Highmark, Inc. v. Hospital Service Association of Northeastern Pennsylvania,* 785 A.2d 93, 98 (Pa.Super.2001), *appeal denied,* 568 Pa. 720, 797 A.2d 914 (2002). *Accord: Smith v. Cumberland Group,* 455 Pa.Super. 276, 687 A.2d 1167, 1171 (1997).

¶ 11 The broad provisions of the arbitration agreement contained in the documents drafted by CitiFinancial and signed by appellants clearly provide for arbitration of all controversies (involving more than $15,000) which could arise between the parties except for a default by the appellants, in which case appellee has specifically retained for itself the one-sided right to proceed against appellants in the Court of Common Pleas. Thus, the present dispute, which is within the scope of the arbitration provision, must be submitted to arbitration if the agreement to arbitrate is valid and enforceable.

¶ 12 The reply of appellants to the preliminary objections of appellee raised the issue of the enforceability of the arbitration agreement—based on claims that the contract was (1) unconscionable, (2) against public policy, and (3) inapplicable to the instant dispute, since the instant controversy was initiated as a class action, and the contract expressly precluded arbitration of class actions. The trial court did not conduct an evidentiary hearing on the issues raised by the pleadings by reason of its determination that, as a matter of law, the arbitration agreement was enforceable

and that the complaint must, as a result, be dismissed.

I. *Applicability of the Federal Arbitration Act*

██ ¶ 13 The issue of whether the FAA controls the instant case to the exclusion of state law is dependent upon whether the parties' contract is one "evidencing a transaction involving commerce." 9 U.S.C. § 2. Appellants have alleged in their complaint that they are residents of the Commonwealth and that appellee CitiFinancial is a Pennsylvania corporation. Appellee alleged in its preliminary objections that the contract under scrutiny involves interstate commerce, and thus was subject to the FAA. The complaint was dismissed upon those preliminary objections without receipt of any evidence upon this issue. Our standard of review of a ruling on preliminary objections requires that we accept as true all of the factual averments of the complaint. *Sunbeam Corp. v. Liberty Mutual Insurance Co.,* 566 Pa. 494, 499, 781 A.2d 1189, 1192 (2001); *Sclabassi v. Nationwide Mutual Fire Insurance Co.,* 789 A.2d 699, 701 (Pa.Super.2001), *appeal denied,* 568 Pa. 722, 797 A.2d 915 (2002). The claim of appellee that the contract is one affecting interstate commerce raises a factual issue. *See: Allied–Bruce Terminix Companies, Inc. and Terminix International Company v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

[M]ost courts today determine that the existence of interstate commerce is an evidentiary matter. See, e.g. *KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.,* 184 F.3d 42 (1st Cir.1999) ("the contracts to which the statute applies implicate interstate commerce, thus subjecting them to the reach of the FAA."); *Ruby–Collins, Inc. v. City of Huntsville, Alabama,* 748 F.2d 573 (11th Cir.1984) (allowing evi-

dentiary hearing to establish the existence of the "interstate nexus" required by the FAA); *C.P. Robinson Construction Company v. National Corp. for Housing Partnerships,* 375 F.Supp. 446, 451 (M.D.N.C.1974) (Setting forth the criteria for a transaction in commerce, including, in general, trade between citizens of the several states and in particular, "purchases of large quantities of building materials and fixtures from out-of-state suppliers.") *See also Starr Elec. Co. v. Basic Constr. Co.,* 586 F.Supp. 964, 965–66 (M.D.N.C.1982) (The Court must decide first whether the subcontract between Starr and Basic evidences a transaction in "commerce," within the meaning of 9 U.S.C. § 1); *Pennsylvania Eng'g Corp. v. Islip Resource Recovery Agency,* 710 F.Supp. 456, 460 (E.D.N.Y.1989) ("A contractual arbitration agreement is subject to the Federal Arbitration Act if the contract 'evidences a transaction involving' interstate or maritime commerce. 9 U.S.C. § 2....")

*United House of Prayer for All People of the Church on the Rock of the Apostolic Faith v. LMA International, Ltd.,* 107 F.Supp.2d 227, 231 (S.D.N.Y.2000). As the only evidence presently in the record is the complaint and the preliminary objections filed by appellee, we are unable to resolve the factual issue of whether the contract involves interstate commerce and is thus controlled by the FAA.

¶ 14 However, Pennsylvania law on the enforceability of agreements to arbitrate is in accord with federal law and requires enforcement of arbitration provisions as written, permitting such provisions to be set aside only for generally recognized contract defenses such as duress, illegality, fraud, unconscionability.

*See: Carll v. The Terminix International Company, L.P.,* 793 A.2d 921 (Pa.Super.2002). Since there is no appreciable difference between Pennsylvania law and the provisions of the FAA on the enforceability of agreements to arbitrate, we will presume, solely for purposes of this appeal, that the contract between the parties is one involving interstate commerce,[7] thus rendering the FAA controlling upon the issue of the enforceability of the arbitration agreement.

¶ 15 The standard of review which the United States Supreme Court has prescribed for a state court determination of whether there is a valid agreement to arbitrate has been keenly described as directing that a state court

"must look to the body of federal arbitration law," *Bhatia [v. Johnston],* 818 F.2d [418] at 421 [5th Cir.1987], which recognizes that "the question of arbitrability [is to] be addressed with a 'healthy regard for the federal policy favoring arbitration,' with doubts regarding the scope of the agreement resolved in favor of arbitration." *id.* (*quoting Moses H. Cone [Memorial Hosp. v. Mercury Const. Corp.],* 460 U.S. [1] at 24–25, 103 S.Ct. [927] at 941[, 74 L.Ed.2d 765 (1983)]). As to the more specific issue of whether there is a valid agreement to arbitrate, " 'courts generally ... should apply ordinary state-law principles that govern the formation of contracts'," *Webb [v. Investacorp, Inc.],* 89 F.3d [252] at 257 [5th Cir.1996] (*quoting First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)), but in doing so, must give "due regard ... to the federal policy favoring arbitration," *id.* (*quoting Volt Info. Sciences, Inc. v. Board of*

---

7. While the loan documents contain a statement to the effect that the transaction is one involving interstate commerce, this self-serving declaration is not dispositive of the issue.

*Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 475–76, 109 S.Ct. 1248, 1253–54, 103 L.Ed.2d 488 (1989)); *McKee v. Home Buyers Warranty Corp. II,* 45 F.3d 981, 984 (5th Cir.1995) ("In construing an arbitration agreement within the scope of the FAA, 'as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability'.") (*quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). At the same time, however, the court may grant relief to a party opposing arbitration where he presents "well supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract'," *Mitsubishi Motors,* 473 U.S. at 627, 105 S.Ct. 3346 (*quoting* 9 U.S.C. § 2); *see also Bhatia,* 818 F.2d at 421 (court should at all times "remain keenly attuned to well-grounded claims that 'the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds "for the revocation of any contract." ' " (quoting 9 U.S.C. § 2)); *Rhode v. E & T Investments, Inc.,* 6 F.Supp.2d 1322, 1326 (M.D.Ala.1998) ("[Section] 2 'gives States . . . methods for protecting consumers against unfair pressure to agree to a contract with an unwarranted arbitration provision' both in equity and under principles of contract law." (*quoting Allied–Bruce Terminix v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995))).

*Bank One, N.A. v. Coates,* 125 F.Supp.2d 819, 828–829 (S.D.Miss.2001), *aff'd.,* 34 Fed.Appx. 964, 2002 WL 663804, 2002 U.S.App.LEXIS 7759 (2002).

¶ 16 As Justice Stephen G. Breyer noted, writing for a majority of the U.S. Supreme Court in *Allied–Bruce Terminix Companies, Inc. v. Dobson, supra:*

> Section 2 [of the FAA] gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision. States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract 9 U.S.C. § 2 (emphasis added). What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit) but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal "footing", directly contrary to the Act's language and Congress' intent.

*Id.* at 513 U.S. at 281, 115 S.Ct. at 843, 130 L.Ed.2d at 769.

¶ 17 Thus, appellants may avoid being compelled to arbitrate their claims if they produce evidence of such "grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. "Generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening" the enforcement provisions of the Federal Arbitration Act. *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902, 909 (1996).

## II. *Unconscionability*

¶ 18 Appellants argue that the loan documents which they signed are unconscio-

nable contracts of adhesion.[8]

¶ 19 "An adhesion contract is defined as a 'standard form contract prepared by one party, to be signed by the party in a weaker position, [usually] a consumer, who has little choice about the terms.'" *Huegel v. Mifflin Construction Co.*, 796 A.2d 350, 357 (Pa.Super.2002), *quoting* Black's Law Dictionary (7th ed.1999). *Accord: Robson v. EMC Insurance Companies*, 785 A.2d 507, 510 (Pa.Super.2001), *appeal denied*, 568 Pa. 703, 796 A.2d 984 (2002); *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000); *Cooper v. MRM Investment Co.*, 199 F.Supp.2d 771, 776 (M.D.Tenn.2002).

¶ 20 A finding that a contract is one of adhesion does not require that the court find the contract unconscionable. Even where a contract is found to be a contract of adhesion, the terms of the contract must be analyzed to determine whether the contract as a whole, or specific provisions of it, are unconscionable. *Rudolph v. Pennsylvania Blue Shield*, 553 Pa. 9, 17, 717 A.2d 508, 512 (1998) (Concurring Opinion, Nigro, J.).

> Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions.

*Worldwide Underwriters Ins. Co. v. Brady*, 973 F.2d 192, 196 (3rd Cir.1992) (citations omitted). *See: Todd Heller, Inc. v. United Parcel Service, Inc.*, 754 A.2d 689, 700 (Pa.Super.2000). The issue of whether a contract is unconscionable is a question of law, as to which our scope of review is plenary. *See: Ferguson v. Lakeland Mu-*

---

**8.** This litigation reveals yet another vignette in the timeless and constant effort by the *haves* to squeeze from the *have nots* even the last drop. It merits emphasis that the term *haves* goes beyond actual *possession* of wealth, to include as well power, resources, and position—and even more, for the *haves* own the *access* to even more power and resources and advantage.

The idealists will blithely observe that the *have nots possess* one advantage, the right to vote, a rather enhanced advantage, says the idealist, since the *have nots* so vastly outnumber the *haves*. Such naivete is more obtuse than blissful, since it ignores the influence, if not the domination of the *haves* upon the election process by reason of *the haves* profligate, even unwholesome, financing of both the *selection* and the *election* of candidates.

The legislative and executive branches have in a fashion more occasional than regular risen to serve the interests of the *have nots* (borrowers), but the *haves* (lenders) consistently design new devices and definitions to preserve the unjust imbalance, since our history demonstrates that their unquenchable thirst for profits is not to be sated. Nor is the beneficiary of such efforts ever in doubt since *if it's good for the powerful, it's bad for the people.*

A song to which the *have nots* marched a century ago expressed the hope that the awesome advantage of the powerful would someday be adjusted and a semblance of equality would prevail:

I've traveled round this country
 From shore to shining shore
 It really makes me wonder
 The things I heard and saw.
I saw the weary farmer
 Plowing sod and loam
 I heard the auction hammer
 Just a-knocking down their home.
But the banks are made of marble
 With a guard at every door
 And the vaults are stuffed with silver
 That the farmer sweated for.
I've seen the weary miners
 Scrubbing coal dust from their backs
 And I heard their children crying
 "Got no coal to heat the shack."
But the banks are made of marble
 With a guard at every door
 And the vaults are stuffed with silver
 That the miner sweated for.
 Alas, however, the bankers are still stuffing—ever larger vaults.

*tual Insurance Co.,* 408 Pa.Super. 332, 596 A.2d 883, 885 (1991), *appeal denied,* 531 Pa. 639, 611 A.2d 712 (1992); *Metalized Ceramics for Electronics Inc. v. National Ammonia Co.,* 444 Pa.Super. 238, 663 A.2d 762, 764 (1995). "In order for a court to deem a contractual provision unconscionable, it must determine both that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions". *Huegel v. Mifflin Construction Co., supra,* 796 A.2d at 357 *quoting Todd Heller, Inc. v. United Parcel Service, Inc., supra,* 754 A.2d at 701. *Accord: Cooper v. MRM Investment Co., supra,* 199 F.Supp.2d at 776; *Haun v. King,* 690 S.W.2d 869, 872 (Tenn.Ct.App.1984).

¶ 21 Our deeply admired former colleague, now Pennsylvania Supreme Court Justice Thomas G. Saylor aptly summarized the law of Pennsylvania on unconscionability:

A contractual provision is unconscionable if: 1) one of the parties had no meaningful choice with respect to the provision, and 2) the provision unreasonably favors the other party. *Witmer v. Exxon Corporation,* 495 Pa. 540, 434 A.2d 1222 (1981); *Metalized Ceramics for Electronics, Inc. v. National Ammonia Company,* 444 Pa.Super. 238, 663 A.2d 762 (1995); *Denlinger, Inc. v. Dendler,* 415 Pa.Super. 164, 608 A.2d 1061 (1992); *Moscatiello[ v. Pittsburgh Contractors Equip. Co.], supra* [407 Pa.Super. 363, 595 A.2d 1190 (1991)]; *Germantown Manufacturing Co. v. Rawlinson,* 341 Pa.Super. 42, 491 A.2d 138 (1985); *Hornberger[ v. General Motors Corp.], supra*[, 929 F.Supp. 884 (E.D.Pa.1996)]. Whether a contractual provision is unconscionable is a question of law for the court. *Denlinger, supra; Hornberger, supra; Jim Dan, [Inc. v. O.M. Scott & Sons Co.,] supra*[, 785 F.Supp. 1196 (W.D.Pa.1992)]. "In determining whether a clause is unconscionable, the court should consider whether, in light of the general commercial background and the commercial needs of a particular trade, the clause is so one-sided that it is unconscionable under the circumstances." *Jim Dan,* 785 F.Supp. at 1200, citing 13 Pa.C.S. § 2302 Comment 1.

*Borden, Inc. v. Advent Ink Co.,* 701 A.2d 255, 265 (Pa.Super.1997). *Accord: Witmer v. Exxon Corp.,* 495 Pa. 540, 551, 434 A.2d 1222, 1228 (1981); *Antz v. GAF Materials Corp.,* 719 A.2d 758, 761 (Pa.Super.1998), *appeal denied,* 559 Pa. 686, 739 A.2d 1054 (1999); *Denlinger, Inc. v. Dendler,* 415 Pa.Super. 164, 608 A.2d 1061, 1067 (1992); *Wagner v. Estate of Rummel,* 391 Pa.Super. 555, 571 A.2d 1055, 1058–1059 (1990); *Germantown Mfg. Co. v. Rawlinson,* 341 Pa.Super. 42, 491 A.2d 138, 145 (1985) *quoting Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C.Cir.1965); Restatement (Second) of Contracts § 208.

¶ 22 Our venerable partner Judge John P. Hester in *Zak v. Prudential Property and Casualty Insurance Co.,* 713 A.2d 681 (Pa.Super.1998), did not hesitate to void, as "completely unconscionable", a clause in an insurance policy which provided that any UIM or UM arbitration award less than $15,000 would be binding on the parties while either party could obtain a trial *de novo* if the award was greater than $15,000, holding that the clause:

allows the insurer to obtain a trial when the claimant or insured obtains an arbitration award of any significant amount but binds the claimant or insured to the amount of the arbitration award when the claimant or insured is awarded nothing or a miniscule amount. Appellee suggests that the clause if fair because "either party" can appeal if the award is

over $15,000. This suggestion ignores the reality of the *effect* of the clause. It allows the insurance company the unfettered right to a trial whenever an award is made in favor of a claimant or insured while a losing claimant or insured is bound by his award. The clause so clearly favors the insurer over the claimant or insured that it is repugnant to notions of due process, equal protection, justice, and fair play.

The test of whether a clause in an insurance contract is unconscionable is twofold: "First, one of the parties to the contract must have lacked a 'meaningful choice' about whether to accept the provision in question. Second, the challenged provision must 'unreasonably favor' the other party to the contract." *Koval v. Liberty Mutual Insurance Co.*, 366 Pa.Super. 415, 531 A.2d 487, 491 (1987). Both conditions are met in this case.

*Zak v. Prudential Property and Casualty Insurance Co., supra,* 713 A.2d at 684.

¶ 23 The arbitration provision at issue in the instant case provides that the Lytles are required to arbitrate all issues involving more than $15,000, while CitiFinancial remains free to enforce its rights to repayment of the debt or to commence foreclosure against the Lytles' home in the Court of Common Pleas. The arbitration provision also provides a right to a *de novo* appeal on any issue, while requiring the payment of substantial costs by the unsuccessful party in connection with such an appeal.[9] The arbitration provision also prohibits the Lytles from arbitrating their claim as a class action and precludes them from class action participation as even a member of a class.

¶ 24 Members of both the United States Senate and the House of Representatives have recently recognized the relentless attempts by corporate entities to thwart, through the use of such provisions, every state consumer statute enacted to balance the economic disparity of the parties, and have introduced legislation in the Senate [10]

---

9. Even the United States Supreme Court has conceded that "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating his federal statutory rights in the arbitrable forum," but held that where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 90–91, 121 S.Ct. 513, 522, 148 L.Ed.2d 373, 383 (2000).

10. The Senate bill provides:
 **SECTION 1. SHORT TITLE.**
 This Act may be cited as the 'Consumer Credit Fair Dispute Resolution Act of 2001'.
 **SEC. 2. CONSUMER CREDIT TRANSACTIONS**
 (a) DEFINITIONS—Section 1 of title 9, United States Code, is amended -
 (1) in the section heading, by striking 'and 'commerce' defined' and inserting, 'commerce', 'consumer credit transac-

tion', and 'consumer credit contract' defined'; and
 (2) by inserting before the period at the end the following: '; 'consumer credit transaction', as herein defined, means the right granted to a natural person to incur debt and defer its payment, where the credit is intended primarily for personal, family, or household purposes; and 'consumer credit contract', as herein defined, means any contract between the parties to a consumer credit transaction.'.
 (b) AGREEMENTS TO ARBITRATE—Section 2 of title 9, United States Code, is amended—
 (1) by striking 'A written' and inserting '(a) IN GENERAL—a written'; and
 (2) by adding at the end the following: '(b) [*sic*] CONSUMER CREDIT CONTRACTS -
 '(1) IN GENERAL—Notwithstanding the preceding sentence, a written provision in any consumer credit contract evidencing a transaction involving commerce to settle by arbitration a contro-

and the House [11] to confront the pinstriped exploiters.[12]

> versy thereafter arising out of the contract, or the refusal to perform the whole or any part thereof, shall not be valid or enforceable.
>
> '(2) LIMITATION—Nothing in this section shall prohibit the enforcement of any written agreement to settle by arbitration a controversy arising out of a consumer credit contract, if such written agreement has been entered into by the parties to the consumer credit contract after the controversy has arisen.'

The Senate bill languishes, some would say has been waylaid, in the legislative process.

**11.** The House bill provides:

> **SECTION 1. SHORT TITLE.**
>
> This Act may be cited as the 'Consumer Fairness Act of 1999'.
>
> **SEC.2.** [*sic*] **PROHIBITION ON ARBITRATION CLAUSES IMPOSED ON CONSUMERS WITHOUT THEIR CONSENT.**
>
> (a) IN GENERAL—The Consumer Credit Protection Act (15 U.S.C. 1601 et seq.) is amended by adding at the end the following:
>
> 'TITLE X—DISPUTE RESOLUTION
>
> 'SEC. 1001. SHORT TITLE; TABLE OF CONTENTS
>
> '(a) SHORT TITLE—This title may be cited as the 'Consumer Fairness Act.'
>
> '(b) TABLE OF CONTENTS—The table of contents for this title is as follows:
>
> 'TITLE X—DISPUTE RESOLUTION
>
> > 'Sec. 1001. Short title; table of contents
> >
> > 'Sec. 1002. Definitions.
> >
> > 'Sec. 1003. Prohibition on arbitration clauses imposed on consumers without their consent.
>
> **SEC. 1002. DEFINITIONS.**
>
> 'For purposes of this title, the following definitions shall apply:
>
> '(1) CONSUMER—the term 'consumer' means any individual.
>
> '(2) CONSUMER TRANSACTION—The term 'consumer transaction' means the sale or rental of goods, services, or real property, including an extension of credit or the provision of any other financial product or service, to an individual in a transaction entered into primarily for personal, family, or household purposes.
>
> '(3) CONSUMER CONTRACT—The term 'consumer contract' means any written, standardized form contract between the parties to a consumer transaction.
>
> 'SEC. 1003. PROHIBITION ON ARBITRATION CLAUSES IMPOSED ON CONSUMERS WITHOUT THEIR CONSENT.
>
> '(a) IN GENERAL—A written provision in any consumer transaction or consumer contract which requires binding arbitration (whether by the terms of such transaction or contract directly or at the request of any party to the transaction or contract) to resolve any controversy arising out of or related to the transaction or contract, or the failure to perform the whole or any part of the transaction or contract shall constitute a violation of this title, shall not be enforceable, and shall be treated as an unfair and deceptive trade act or practice under Federal or State Law.
>
> '(b) POST–CONTROVERSY AGREEMENTS—Subsection (a) shall not apply with respect to a written agreement to determine by binding arbitration an existing controversy arising out of a consumer transaction or consumer contract if the written agreement has been entered into by the parties to the consumer transaction or consumer contract after the controversy has arisen.
>
> * * * *

The House bill, like the Senate bill of the preceding footnote, languishes in the legislative process.

**12.** This court earlier considered the credit card operations of bankers/lenders and opined:

> Anyone who is perplexed that banking interests have persuaded the Pennsylvania legislature to approve an interest rate of 18% must surely be appalled to learn that the banking interests have convinced the legislature of Ohio that an interest rate of 25% is neither criminal nor confiscatory. Don Corleone once rasped: "A lawyer with his briefcase can steal more than a hundred men with guns." Mario Puzo, *The Godfather*, p.51 (Putnam Publishing Group 1969)—one supposes that professional courtesy precluded his allusion to the banker.

*Mazaika v. Bank One, Columbus, N.A.*, 439 Pa.Super. 95, 653 A.2d 640, 642 fn. 3 (1994), *rev'd.*, 545 Pa. 115, 680 A.2d 845 (1996).

¶ 25 As a result of the delay in enacting these bills into law, the victims of these

> tween the parties to a consumer transaction.

schemes have sought justice from the courts. The delay in enacting these bills is, however, troubling.

### 1. *Reservation of Right of Access to Courts only for CitiFinancial*

¶ 26 While no Pennsylvania appellate court has yet addressed the issue of whether an arbitration provision in a consumer contract which reserves a right of access to the courts only for the merchant is voidable on the basis of unconscionability, a number of other jurisdictions have addressed such one-sided arbitration provisions.

¶ 27 The Supreme Court of West Virginia, in ruling on the certified question of

> Whether an arbitration agreement entered into as part of a consumer loan transaction containing a substantial waiver of the consumer's rights, including access to the courts, while preserving for all practical purposes the lender's right to a judicial forum, is void as a matter of law?

held:

> that where an arbitration agreement entered into as part of a consumer loan transaction contains a substantial waiver of the borrower's rights, including access to the courts, while preserving the lender's right to a judicial forum, the agreement is unconscionable and, therefore, void and unenforceable as a matter of law.

*Arnold v. United Companies Lending Corp.*, 204 W.Va. 229, 237, 511 S.E.2d 854, 862 (1998).

¶ 28 That one-sided preservation of the right of access to the courts is unconscionable was reiterated by the West Virginia Supreme Court when it invalidated an arbitration provision in *State of West Virginia ex rel. Dunlap v. Berger*, 211 W.Va.

549, 567 S.E.2d 265 (2002). The West Virginia Supreme Court there noted:

> Confronted with a similar provision that retained significant rights to use the court system for a consumer lender, but denied the right to invoke the power of the court system to a borrower, we held in Syllabus Point 5, *Arnold v. United Companies Lending Corp.*, 204 W.Va. 229, 511 S.E.2d 854 (1998) that:
>
>> Where an arbitration agreement entered into as part of a consumer loan transaction contains a substantial waiver of the borrower's rights, including access to the courts, while preserving the lender's right to a judicial forum, the agreement is unconscionable and, therefore, void and unenforceable as a matter of law.
>
> We agree that [respondents] retention of the right to use the courts for its most important remedies, at the same time that it denies that forum to Mr. Dunlap with respect to his most important remedies, meets our established criteria for unconscionability in the context of a contract of adhesion, and this reason provides additional and independently adequate grounds for our holding herein.

*State of West Virginia ex rel. Dunlap v. Berger*, 211 W.Va. at 565, 567 S.E.2d at 280.

¶ 29 Similarly, the Montana Supreme Court in *Iwen v. U.S. West Direct*, 293 Mont. 512, 977 P.2d 989 (1999), voided as unconscionable an arbitration provision contained in a contract for advertisement in a telephone directory. The arbitration clause provided:

> Any controversy or claim arising out of or relating to this Agreement, or breach thereof, other than an action by Publisher for the collection of the amounts due under this Agreement, shall be settled by final, binding arbitration in accordance with the Commercial Arbitration

Rules of the American Arbitration Association . . . .

The Montana Supreme Court opined:

Consistent with our decision in *Leibrand[ v. National Farmers Union Property & Cas. Co.*, 272 Mont. 1, 898 P.2d 1220 (1995)] and others which have defined contract unconscionability, this case presents a clear example of an arbitration provision that lacks mutuality of obligation, is one-sided, and contains terms that are unreasonably favorable to the drafter. Because U.S. West Direct presented this agreement on a take-it-or-leave-it basis, it is also a contract in which there was no meaningful choice on the part of the weaker bargaining party regarding acceptance of the provisions. Certainly, this does not mean arbitration agreements must contain mutual promises that give the parties identical rights and obligations, or that the parties must be bound in the exact same manner. This simply restates the rule of law that disparities in the rights of the contracting parties must not be so one-sided and unreasonably favorable to the drafter, as they are in this case, that the agreement becomes unconscionable and oppressive. *See Riccardi v. Modern Silver Linen Supply Co.*, (1974), 45 A.D.2d 191, 356 N.Y.S.2d 872.

\* \*

Accordingly, our application of general principles that exist at law or in equity for the revocation of any contract leads us to conclude that the arbitration provision at issue in this case is unconscionable. Our application of Montana law regarding unconscionability does not undermine the right to arbitrate which is, by the very language of the Federal Arbitration Act, intended to encompass only those arbitration agreements that are not tainted by fraud, duress, or unconscionability.

*Iwen v. U.S. West Direct, supra*, at 522, 977 P.2d at 996.

¶ 30 The United States Court of Appeals for the Ninth Circuit found that, under Montana law as well as under the FAA, an arbitration clause in a franchise agreement which provided for binding arbitration of the weaker bargaining party's claims, but allowed the stronger bargaining party the opportunity to seek judicial remedies to enforce contractual obligations, was unconscionable and unenforceable. *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931 (9th Cir.2001), *cert. denied*, 534 U.S. 1133, 122 S.Ct. 1075, 151 L.Ed.2d 977 (2002).

¶ 31 The Ohio Supreme Court, in *Williams v. Aetna Finance Company*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998), *cert. denied*, 526 U.S. 1051, 119 S.Ct. 1357, 143 L.Ed.2d 518 (1999), also refused to enforce an arbitration clause in a consumer loan contract which preserved for the finance company the judicial remedy of foreclosure on the debtor's mortgage but restricted the debtor's remedies solely to arbitration.

¶ 32 Similarly, the U.S. District Court for the Northern District of California in *Acorn v. Household International, Inc.*, 211 F.Supp.2d 1160 (N.D.Cal.2002), refused to enforce an arbitration provision contained in documents executed in connection with a consumer loan where the arbitration clause which called for arbitration pursuant to the FAA required (1) consumers to arbitrate all of their claims, (2) preserved the corporate lender's judicial remedies with respect to foreclosure, (3) precluded class actions, and (4) provided for the costs of the arbitration to be paid by both parties. The *Acorn* court found the one-sided provisions of the consumer loan contract to be unconscionable and unenforceable.

¶ 33 Based on similar grounds, the California Court of Appeals in *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846, 113 Cal.Rptr.2d 376 (Cal.App. 1st Dist.2001), affirmed the trial court's denial, based on grounds of unconscionability, of a petition to compel arbitration pursuant to the FAA in an action by borrowers who had entered into a reverse mortgage. The California Court of Appeals noted that the stronger party may not, through an adhesive contract, impose the arbitration forum on the weaker party without accepting that forum for itself

> "without at least some reasonable justification for such one-sidedness based on 'business realities'" [*quoting Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 117, 99 Cal. Rptr.2d 745, 6 P.3d 669]. However, unless the "business realities" that create the special need for such an advantage are explained in the contract itself, they must be factually established.

*Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th at 855, 113 Cal.Rptr.2d at 383.

¶ 34 While we have focused upon rulings from foreign jurisdictions sustaining challenges to arbitration clauses based on findings by those courts that the provisions were unconscionable, the Pennsylvania appellate courts, while not yet having addressed the precise issue at hand, are not strangers to the doctrine of unconscionability. This Court invalidated the replacement requirement contained in a homeowners insurance policy on the grounds of unconscionability in *Ferguson v. Lakeland Mutual Insurance Co.*, 596 A.2d 883 (Pa.Super.1991), *appeal denied*, 531 Pa. 639, 611 A.2d 712 (1992). The Court, in an opinion by the illustrious President Judge Emeritus William F. Cercone noted:

> [A] court may refuse to enforce a contract or any clause of a contract if [the] court as a matter of law deems the contract or any clause of the contract to have been unconscionable at the time it was made. [*Standard Venetian Blind Co. v. American Empire Ins. Co.*,] *Id.* 503 Pa. [300] at 307, 469 A.2d [563] at 567 [1983]. Inquiries concerning whether a contract or clause is unconscionable are properly a question of law for the court. *Bishop v. Washington*, 331 Pa.Super. 387, 399, 480 A.2d 1088, 1094 (1984) (citations omitted). With regard to such inquiries, we also noted in *Koval v. Liberty Mutual Insurance Company*, 366 Pa.Super. 415, 531 A.2d 487 (1987), as follows:

> > The test of unconscionability is twofold. First, one of the parties to the contract must have lacked a meaningful choice about whether to accept the provision in question. Second, the challenged provision must unreasonably favor the other party to the contract.

> *Id.* 531 A.2d at 491 (citations and quotations marks omitted).

*Ferguson v. Lakeland Mutual Insurance Co.*, *supra*, 596 A.2d at 885.

> [W]e recognize the rule that a contract or a clause in a contract is to be considered unconscionable if there is 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other.' *Beckman v. Vassall–Dillworth Lincoln Mercury, Inc.*, 321 Pa.Super. 428, 468 A.2d 784, 788–89 (1983), *citing Witmer v. Exxon Corp.*, 495 Pa. 540, 551, 434 A.2d 1222, 1228 (1981); *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir.1965).

*Metalized Ceramics for Electronics, Inc., v. National Ammonia Co.*, 444 Pa.Super. 238, 663 A.2d 762, 764 (1995).

¶ 35 This Court has, as well, in an opinion by our astute President Judge Joseph

A. Del Sole found that an arbitration provision which limited the ability of the arbitrators to award consequential or punitive damages was unconscionable and thus unenforceable under Pennsylvania law, despite the applicability of the FAA. *See: Carll v. The Terminix International Co., supra. See also: Antz v. GAF Materials Corp., supra* (limitations of consequential damages in express warranty unconscionable).

▇ ¶ 36 We find that,[13] under Pennsylvania law, the reservation by CitiFinancial of access to the courts for itself to the exclusion of the consumer creates a presumption of unconscionability, which in the absence of "business realities" that *compel* inclusion of such a provision in an arbitration provision, renders the arbitration provision unconscionable and unenforceable under Pennsylvania law.

¶ 37 We recognize, however, that CitiFinancial has not been afforded an opportunity to attempt to establish the existence of "business realities" which could justify the use of such an offensive provision in a consumer contract. We, therefore, vacate the order which dismissed the complaint and remand to allow CitiFinancial an opportunity to establish, if it can, an unavoidable "business reality" which precludes its use of the arbitration forum.

## 2. *Prohibition of Class Actions*

¶ 38 Appellants also argue that the severable prohibition against the use of or joinder in a class action against CitiFinancial is a violation of the public policy of this Commonwealth since the clause "severely limit(s) borrowers' rights to seek legal redress, and ... contravene(s) the public policies in favor of class actions in order to efficiently resolve the claims of persons in identical circumstances."

¶ 39 Appellants properly cite *Cambanis v. Nationwide Insurance Co.*, 348 Pa.Super. 41, 501 A.2d 635 (1985), and *Foust v. Southeastern Transportation Authority*, 756 A.2d 112, 118 (Pa.Super.2000), *appeal denied*, 565 Pa. 652, 771 A.2d 1289 (2001), in support of their claim that class actions are favored in this Commonwealth as a means of resolving many meritorious claims which would otherwise, due to the amounts involved, escape prosecution. This Court, in *Dickler v. Shearson Lehman Hutton, Inc., supra*, in recognition of that policy, and in light of the parties' arbitration agreement which was silent on the availability of class actions, directed the arbitration to proceed as a class action. *See also: Stevenson v. Commonwealth, Deputy of Revenue*, 489 Pa. 1, 413 A.2d 667 (1980); *New England Energy, Inc. v. Keystone Shipping Co.*, 855 F.2d 1, 7 (1st Cir.1988), *cert. denied*, 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 832 (1989); *Blue Cross v. Superior Court*, 67 Cal.App.4th 42, 78 Cal.Rptr.2d 779, 790 (1998), *cert. denied*, 527 U.S. 1003, 119 S.Ct. 2338, 144 L.Ed.2d 235 (1999).[14] The arbitration pro-

---

**13.** We are, of course, aware of a number of rulings to the contrary. *See: e.g. Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *Johnson v. West Suburban Bank*, 225 F.3d 366 (3rd Cir.2000), *cert. denied*, 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001); *Harris v. Green Tree Financial Corp.*, 183 F.3d 173 (3rd Cir.1999); *Hale v. First USA Bank, N.A.*, 2001 WL 687371, 2001 U.S. Dist. LEXIS 8045 (S.D.N.Y.2001); *Marsh v. First USA Bank N.A.*, 103 F.Supp.2d ·909

(N.D.Tx.2000); *Gras v. Associates First Capital Corp., et al* 346 N.J.Super. 42, 786 A.2d 886 (App.Div.2001) (class action prohibition), *cert. denied*, 171 N.J. 445, 794 A.2d 184 (2002); *In Re Conseco Finance Servicing Corp.*, 19 S.W.3d 562 (Tex.App.2000).

**14.** A number of courts have held that arbitration, being a matter of agreement between the parties, cannot proceed as a class action unless the arbitration agreement specifically provides for such a procedure. *See, e.g., Balf-*

vision at issue herein, however, is not silent on the subject but specifically prohibits any use of or participation in a class action by the Lytles.

¶ 40 The U.S. Third Circuit Court of Appeals has specifically rejected an identical challenge to the validity of an arbitration clause contained in a consumer loan contract which precluded the use of class actions. *See: Johnson v. West Suburban Bank,* 225 F.3d 366 (3rd Cir.2000), *cert. denied,* 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001). The Court compelled arbitration of the plaintiff's claim under the Truth in Lending Act, finding that the provisions in the consumer loan agreement requiring arbitration and prohibiting class action litigation—provisions which mirror the Lytles contract—did not violate the public policy evidenced by the Truth in Lending Act. The Third Circuit found:

The sums available in recovery to individual plaintiffs are not automatically increased by use of the class forum. Indeed, individual plaintiff recoveries available in a class action may be lower than those possible in individual suits because the recovery available under TILA's statutory cap on class recoveries is spread over the entire class. Nor will arbitration necessarily choke off the supply of lawyers willing to pursue claims on behalf of debtors. Attorneys' fees are recoverable under the TILA, *see* 15 U.S.C. § 1640(a)(3), and would therefore appear to be recoverable in arbitration, as arbitrators possess the power to fashion the same relief as courts. [footnote omitted] In sum, though pursuing individual claims in arbitration may well be less attractive than pursuing a class action in the courts, we do not agree that compelling arbitration of the claim of a prospective class action plaintiff irrecon-

cilably conflicts with TILA's goal of encouraging private actions to deter violations of the Act.

*Johnson v. West Suburban Bank, supra,* 225 F.3d at 374.

¶ 41 While we are not bound by the decision of the *Johnson* court, the record before us is devoid of any evidence that would establish that the damages claimed by appellants are insufficient to permit the Lytles to seek legal redress for their injuries in the absence of a class action. In the absence of such evidence, this challenge to the prohibition against class actions as a violation of public policy must fail. However, upon remand, the trial court, pursuant to Pa.R.Civ.P. 1028(c)(2), may also receive and consider evidence relevant to the Lytles' argument that the costs associates with individual versus class-based litigation of their claim against CitiFinancial would, in light of the amount of their damages, result in continuing immunity for CitiFinancial for its wrongful acts.

### 3. Cost of Arbitration Process as Unconscionable

¶ 42 Appellants may also offer evidence on remand to attempt to establish that the costs associated with the arbitration of their single claim against CitiFinancial would operate to preclude them from pursuing a remedy for the wrongs allegedly perpetrated by CitiFinancial.

¶ 43 The Court of Appeals of Washington, in *Mendez v. Palm Harbor Homes, Inc.,* 111 Wash.App. 446, 45 P.3d 594 (2002), recently authorized the use, in the State of Washington, of "an equitable and legal prohibitive cost defense to contractually agreed arbitration . . . ." *Id.* at 450,

*our, Guthrie and Co. v. Commercial Metals Co.,* 93 Wash.2d 199, 202, 607 P.2d 856, 857

(1980); *Champ v. Siegel Trading Co., Inc.,* 55 F.3d 269 (7th Cir.1995).

45 P.3d at 597. The *Mendez* Court, in a compelling rationale for its holding, noted:

> Significantly, *Green Tree[ Financial Corp. v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)] allows a "prohibitive cost" defense to arbitration. Some courts applying *Green Tree* have discussed the defense in terms of unconscionability. *See Ting v. AT & T*, 182 F.Supp.2d 902, 933 (N.D.Cal.2002) (substantive unconscionability); *In re FirstMerit Bank*, 52 S.W.3d [749] at 756 [Tex.2001] (unconscionability). By contrast, at least one court viewed the defense as one standing alone and apart from the unconscionability analysis. *Camacho*, 167 F.Supp.2d at 896 n. 2. A number of quite recent cases discussing the *Green Tree* prohibitive cost defense illustrate how this new defense applies to contractual arbitration clauses like the one involving Mr. Mendez.

\* \* \* \*

Very recently, a federal district court in California held AT & T's AAA arbitration provisions unconscionable because they placed prohibitive costs on complaining customers attempting to vindicate their claims. *Ting*, 182 F.Supp.2d at 934–35. The *Ting* court noted the average daily rate of compensation for an arbitrator in Northern California was $1,899. *Id.* at 934. Considering the average rate of compensation and various filing fees, administrative fees, and deposits, the *Ting* court determined that "a class member's potential cost before arbitration begins would be $5,800." *Id.* "Filing that suit in a court, which she supports with her taxes, would generally cost her under $200 in California." *Id.* "Having to advance such substantial sums will deter many litigants from proceeding." *Id.* (*citing Phillips[ v. Associates Home Equity Services]*, 179 F.Supp.2d [840] at 846–47 [N.D.Ill. 2001]).

Given the light shed by these recent authorities, we conclude Mr. Mendez has met his burden to show prohibitive costs. Similar to the facts in *Phillips*, Palm Harbor does not dispute Mr. Mendez could not "afford the costs associates with arbitration." *Phillips*, 179 F.Supp.2d at 846.

Washington's policy favoring arbitration is grounded on the proposition that arbitration allows litigants to avoid the formalities, expense, and delays inherent in the court system. *Perez v. Mid–Century Ins. Co.*, 85 Wash.App. 760, 765, 934 P.2d 731 (1997). This policy is defeated when an arbitration agreement triggers costs effectively depriving a plaintiff of limited pecuniary means of a forum for vindicating claims. *Green Tree*, 531 U.S. at 90, 121 S.Ct. 513; *see also* RICHARD M. ALDERMAN, *Pre–Dispute Mandatory Arbitration in Consumer Contracts: A Call for Reform*, 38 Hous.L.Rev. 1237 (2001); SHELLY SMITH, COMMENT, *Mandatory Arbitration Clauses in Consumer Contracts: Consumer Protection and the Circumvention of the Judicial System*, 50 DePaul L.Rev. 1191, 1220 (2001) (contending large corporations use arbitration clauses as a shield to prevent consumers from accessing the judicial system to enforce their statutory rights).

Here, it is reasonably sure by prima facie proof that Mr. Mendez would have been required to spend up front well over $2,000 to try to vindicate his rights under a contract to buy a $12,000 item in order to resolve a potential $1,500 dispute. Avoiding the public court system to save time and money is a laudable societal goal. But, avoiding the public court system in a way that effectively denies citizens access to resolving everyday societal disputes is unconscionable.

Goals favoring arbitration of civil disputes must not be used to work oppression. When the goals given in support of contract clauses like this are used as a sword to strike down access to justice instead of as a shield against prohibitive costs, we must defer to the overriding principle of access to justice.

In sum, for the first time in Washington, we recognize a variation of the *Green Tree* prohibitive cost defense to the enforcement of an arbitration agreement under chapter 7.04 RCW. Under this defense, an arbitration agreement may be stricken when the party opposing arbitration reasonably shows in law or equity that prohibitive costs are likely to render the arbitral forum inaccessible. *Mendez v. Palm Harbor, supra,* 111 Wash. App. at 462–465, 45 P.3d at 603–605. *See also: Cooper v. MRM Investment Co., supra; Camacho v. Holiday Homes, Inc.,* 167 F.Supp.2d 892 (W.D.Va.2001); *Ball v. SFX Broadcasting, Inc.,* 165 F.Supp.2d 230 (N.D.N.Y.2001); *State of W. Virginia ex rel Dunlap v. Berger, supra.*

¶ 44 As noted in the foregoing discussion, we vacate the order which dismissed the Lytle's complaint and further remand to enable the trial court to conduct a hearing upon the issue of the unconscionability of the arbitration provision, specifically, the existence of a business reality which precluded CitiFinancial from agreeing to be bound by the arbitration provisions. In the absence of such evidence, the trial court must overrule the preliminary objections [15] that were based on the arbitration clause.

¶ 45 If CitiFinancial presents a compelling basis for the one-sided arbitration clause, appellants are to be afforded an opportunity to present evidence on the issue of the cost of arbitration as contrast-

ed to court proceedings and the ability of consumers such as the Lytles to obtain relief in the absence of a class action from so predatory a consumer contract as the underlying agreement crafted by appellee.

¶ 46 Order vacated. Case remanded. Jurisdiction relinquished.

¶ 47 Judge JOYCE concurs in the result.

---

15. Such a result will, of course, render the related issues concerning the costs associated with arbitration and the viability of the prohibition against class actions moot.